No. 16,475.

RICHARDSON *v.* RICHARDSON.
(236 P. [2d] 121)

Decided September 17, 1951.

Mr. Tom M. Miller, Mr. John Ira Green, Mr. H. S. Lattimore, for plaintiff in error.

Messrs. Moses & DeSouchet, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

Defendant in error, to whom we hereinafter refer as the wife, brought an action for divorce against plaintiff in error, hereinafter designated as the husband. She alleged extreme and repeated acts of cruelty, and that the husband had been an habitual drunkard for more

than one year prior to the commencement of the action. She sought a decree of divorce, custody of the three minor children of the parties, support and maintenance for herself and children, and a division of property. Personal service of the summons was had upon the husband in the county where the action was instituted.

Upon the hearing of a motion for temporary orders, filed by the wife, the husband appeared in person and by attorney and gave testimony bearing upon the issues then being considered by the court. The hearing on this motion was held June 10, 1948. The court ordered $225.00 per month to be paid by the husband for the support and maintenance of the wife and children during the pendency of the action. It further ordered the payment of $350.00 as a retainer fee to the wife's attorneys, and in order that funds might be provided with which to make said payments, the wife was authorized and directed to execute a chattel mortgage on certain livestock located on the ranch which had been occupied by the parties. The said ranch consisted of 1600 acres, about half of which was pasture land and the balance produces native hay. Title to the ranch stood in the husband. The wife was granted occupancy of the home, and the husband was enjoined from entering the residence. Upon the entry of the order providing this temporary relief to the wife, the husband's attorney asked leave to withdraw his appearance for the husband, but the trial court refused to permit the withdrawal.

On July 2, 1948, the case came on for hearing upon the complaint of the wife, no answer having been filed by the husband. It appears from the record that on this date the husband was lodged in jail in the courthouse building. In the findings of the trial court, the cause of the husband's imprisonment was stated as follows: "He had been incarcerated by reason of a breach of the peace on threats to kill his wife if she would not join in the sale of their property * * *." On said date new counsel appeared for the husband in the person of Mr. Allen.

Before the entry of the interlocutory decree and prior to the taking of any evidence, the following took place:

"Mr. Allen: I request permission to have my name set down as counsel for John Richardson and we will file no answer and make no protest. If the Court finds that a decree for divorce should be entered that is a matter for the Court.

"The Court: At the last hearing Mr. Green requested leave to withdraw which was not given so we want to keep that straight in the record.

"Mr. Allen: Yes, the defendant is in jail, do you want him present?

"The Court: Well as far as taking him out of jail I won't do it unless he is appearing here and resisting this complaint.

"Mr. Allen: Well we will proceed without him.

"The Court: If you want to file a pleading and contest the issue on the question of divorce he has a perfect right to do so and appear.

"Mr. Allen: I shall not do so. Comes now C. H. Allen and enters his appearance for John T. Richardson, the defendant in a certain divorce action brought by his wife, and states in open Court that he has advised his client not to file an answer or any pleading in this matter at this time.

"Mr. Blickhahn: Shall we proceed?

"The Court: Yes, if he is not making an appearance by pleading he is not controverting anything that is said.

"Mr. Allen: No.

"The Court: Very well, proceed."

Following the taking of testimony an interlocutory decree of divorce was entered upon the statutory ground of extreme and repeated acts of cruelty. The order pendente lite was continued in effect and the wife was given general authority to harvest and market the hay crop on the ranch formerly occupied by the parties, and to use the moneys thus received to apply on indebted-

ness theretofore existing, or created under the temporary order.

On or about July 10, 1948, the husband was released from jail on a peace bond and forthwith went to the premises occupied by the wife, engaged in some kind of gun play and carried off one of the children. Two separate criminal informations were thereafter filed against him charging him with assault with intent to commit murder and kidnapping. He was admitted to bail on these charges and then left the State of Colorado and went to Texas.

On August 27, 1948, purported lunacy proceedings were had against the husband in Young county, Texas, upon complaint of Charles S. Richardson, his brother. The complaint in lunacy was filed; the husband was taken into custody; and six jurors were summoned to hear the case. On the trial, findings were made, and the husband was committed. All of these events took place on the above date.

The findings included the statement by the Texas court that the husband had been an inhabitant of Texas for six months prior to the institution of the proceedings, and that he was not then being held under any criminal charge. The husband was committed to the Wichita Falls State Hospital and it is disclosed in the record that he left the hospital on December 2, 1948, shortly after the opening of the Conejos county district court term where he was to appear by the terms of his appearance bonds in the two criminal cases to which we have hereinabove referred. The husband has not returned to the State of Colorado since that time, nor has he ever complied with any orders which the trial court made, or done anything whatever to make provision for the support and maintenance of the wife and three minor children, the eldest of whom was thirteen years of age at the time of the trial.

Prior to the expiration of six months from the date of the interlocutory decree, and on December 27, 1948,

motion to vacate the interlocutory decree was filed on behalf of the husband, in which it was alleged in substance that he was an insane person throughout the pendency of the action and was so dethroned of reason as to be incapable of answering the complaint of the wife; that at the time of the alleged commission of all acts relied upon as grounds for divorce, the said husband was a lunatic and insane person and was not responsible or answerable for his acts; that upon the date of the interlocutory decree he was incarcerated in jail upon an alleged criminal complaint wherein the wife was the complaining party; that the husband was then insane, and known by the wife to be insane, and that the trial of the action "while the defendant was insane and confined on a criminal charge based upon her complaint all constitutes an inequitable and fraudulent attempt and scheme on plaintiff's part to obtain the property of the defendant consisting of real and personal property in Colorado, valued at $60,000.00 to $80,000.00, without a fair and impartial hearing and without just cause and in violation of the due process clause of the Federal Constitution." It was further alleged in said motion that the husband had been adjudicated an insane person by the county court of Young county, Texas; that said judgment and commitment remained in full force and effect; and that the Colorado court was without jurisdiction to enter the interlocutory decree, "in that at the time of the purported service of Summons and Complaint on the defendant he was an insane person and so mentally diseased 'and dethroned of reason as to be incapable of making decisions and did not have any legally appointed representative or conservator in the State of Colorado."

Hearing on the motion to vacate the interlocutory decree was held on January 29, 1949. On March 29, 1949, the court entered findings upon the said motion, which, after a long narration of the turbulent marriage experiences of the parties, directed that the husband

should appear for physical examination by psychiatrists or doctors within the jurisdiction of the trial court, and upon failure of the husband to so appear said motion would be dismissed and denied. The husband failed to submit to such examination, and on April 18, 1949, the motion to vacate the interlocutory decree of divorce was denied. On April 25, 1949, a final judgment and decree of divorce was entered in which was settled the property rights of the parties.

The husband owned rights to receive oil royalties from what is known as the Richardson Trust in Texas. The property operated under said trust consists of oil wells and oil-bearing lands. From such oil royalties the husband had an income of about $9,000.00 a year at the time of the proceedings in the trial court, and the indications were that said income was steadily increasing. The record of the purported lunacy proceedings in Texas contained a statement that the value of the husband's oil interest in said trust was $75,000.00. Other evidence before the trial court indicated that it might possibly be worth $250,000.00. The failure and refusal of the husband, or his brothers or any person having actual knowledge of the value of the oil interests, to appear before the trial court and furnish evidence with regard thereto, prevented an accurate determination of the actual worth of that asset. The ranch property, together with the equipment and livestock thereon, was variously estimated to be worth between $45,000.00 and $80,000.00. Encumbrances thereon amounted to about $17,500.00. The wife testified that the purchase price of the ranch was $65,000.00 and that the cattle were worth seven or eight thousand dollars. She estimated the equity in the ranch and cattle to be worth $50,000.00.

The trial court awarded the Colorado real estate to the wife and children, with a power in the wife to sell or encumber the same, or parts thereof, for the purpose of renewing present mortgages or to prevent the entire loss of the property through foreclosure of the existing

liens thereon. With reference to the indebtedness on said ranch, the court ordered that the husband should pay, "either directly or through the plaintiff, one-half of the remainder now owing, and interests and other incidental expenses, on such portion of such mortgage debts as are now unpaid." The court decreed that the husband was not relieved from the obligation to support his children, and adjudged that "all of the cattle and livestock and personalty upon said ranch property, as well as all tools and implements" be set over unto the plaintiff as her sole and separate property "as a means of enabling her to support herself and family and discharge her debts." Motion for new trial was denied and the husband seeks reversal of the judgment by writ of error.

The points specified as error are argued under five headings as follows: (1) The court erred in receiving evidence of alleged acts of cruelty committed in Texas while the parties resided there and which acts of cruelty were condoned; (2) the husband was an insane man during all the proceedings in the trial court and at the time the alleged acts of cruelty were committed, by reason of which its judgment is void; (3) the trial court erred in refusing to give full faith and credit to the insanity adjudication by the Texas court; (4) the trial court erred in informing counsel in advance of a hearing that it would not hear evidence of Texas doctors on behalf of the husband relating to his alleged insanity until he came into the jurisdiction of the court and submitted to an examination by psychiatrists of the wife's selection; (5) the property division was not based upon competent evidence.

Questions to be Determined.

First: *Where a defendant in an action for divorce files no answer and offers no contest on the issues tendered by the complaint, can he thereafter have set aside the divorce decree upon the ground that some of the acts of cruelty to which plaintiff testified were committed out-*

*side the State of Colorado where the parties formerly lived, and were in fact condoned?*

■ ■ This question is answered in the negative. Condonation is an affirmative defense and cannot be relied upon by one who makes no answer to the allegations of a complaint in divorce; moreover, condonation is the conditional forgiveness of an antecedent matrimonial offense, the condition being that the offense shall not be repeated. *Harding v. Harding,* 36 Colo. 106, 85 Pac. 423. We said in *Thum v. Thum,* 105 Colo. 352, 98 P. (2d) 279: "Condonation is always conditional. It is conditioned on the assumption that there will be no repetition of the conduct condoned. Such a repetition voids the condonation and makes available as grounds for divorce not only the acts committed subsequent to the condonation but also those which have been condoned." Abundant evidence of extreme and repeated acts of cruelty following the reconciliations of the parties after previous separations appears in the record. The argument advanced on behalf of the husband in this connection is wholly without merit.

Second: *"Where a person, served with process in an action for divorce, employs an attorney; appears and gives testimony at a hearing conducted before the court; thereafter elects not to contest the action and permits an interlocutory decree of divorce to be entered; then leaves the jurisdiction of the court and fails to return; and no suggestion is made on his behalf challenging his mental capacity, must a motion to vacate the interlocutory decree of divorce upon the ground that the defendant was insane throughout the pendency of the proceedings be granted as a matter of right?*

■ ■ This question is answered in the negative. We will not lengthen this opinion with quotations from the numerous authorities that are available upon the subject. Suffice it to say that a person is presumed to be sane, and that presumption continues until the contrary appears by proof of a valid adjudication of incompetency

by a tribunal having jurisdiction to act, or by other procedure authorized by law intended to determine the issue as to whether such person is sane or insane. *Isham v. People*, 82 Colo. 550, 262 Pac. 89. No suggestion of insanity of the husband was made to the court at any time prior to the date of the interlocutory decree in which it was ordered that substantial contribution be made by the husband toward the support of the wife and children. The husband then left the jurisdiction of the court and has completely ignored all of its orders. It was not until five months and twenty-five days following the entry of the interlocutory decree that the question of the husband's sanity was injected into the case by the motion to vacate the judgment. Even then, he failed and refused to submit to an examination and refused to cooperate in any way whatever to reach a fair determination of the issue which he belatedly tendered regarding his sanity. Whether the motion to vacate the interlocutory decree should be granted was a question for determination within the sound discretion of the trial court, and the decision thereon will not be disturbed in the absence of a showing that it abused its discretion. No such showing appears in the record.

In *Engelbercht v. Davison*, 204 Iowa 1394, 213 N.W. 225, the holding of the court was that a decree would not be set aside, under circumstances similar to those existing in the instant case. There it was argued that defendant was insane and that he was not represented by a guardian. He was, however, represented by counsel and testified as a witness. There had been no adjudication of insanity and no one claimed insanity at the time of the trial. The Iowa court said: "To hold otherwise would require the court or a plaintiff to examine into the mental condition of every adult defendant appearing by counsel, before a judgment could safely be entered." To like effect is *Ware v. Eckman*, 224 Iowa 783, 277 N.W. 725; and *Farmers and Merchants Bank v. Duke*, 187 N.C. 386, 122 S.E. 1; 34 A.L.R. 215. An extensive and inform-

ative note appears in 34 A.L.R. 225, covering the question under discussion, and our conclusion is fully supported by the vast majority of the cases there cited.

■ Third: *Did the lunacy proceedings in the Texas county court result in a valid adjudication of insanity which was entitled to full faith and credit in the Colorado court?*

■ This question is answered in the negative. We have held that in lunacy proceedings essential jurisdictional facts must appear on the face of the record. *Isham v. People, supra.* The statutory requirement of notice to the person whose sanity is questioned, concerning the time and place of hearing on the complaint in lunacy, is mandatory and there must be a strict compliance therewith before jurisdiction is acquired by a tribunal to render a valid judgment in the proceeding. *Okerberg v. People,* 119 Colo. 529, 205 P. (2d) 224. The admitted statutory requirement of such notice in the State of Texas is that a three-day notice of the time and place of the hearing shall be given the person whose mental condition is questioned. From the record in the Texas proceedings it clearly appears that no such notice was given. While other matters appearing on the face of the record make the Texas lunacy proceedings appear highly questionable, the failure to give the required notice is in itself sufficient to void the entire transaction. The judgment being void because the court had no jurisdiction to enter it, there is nothing upon which to base a claim of full faith and credit.

■ Fourth: *Did. the trial court err in ruling that it would not receive in evidence the depositions of certain Texas doctors until the husband made himself available for examination within the jurisdiction of Colorado by psychiatrists or physicians who might be selected by the wife?*

This question is answered in the negative. The contention is made on behalf of the husband that when the court ruled that he would have to submit to an examina-

tion within the jurisdiction of the court before the testimony of doctors who had examined him in Texas would be admitted, he was denied due process of law guaranteed by the state and federal Constitutions. The argument is without merit. The court made the ruling in response to a request of counsel for the husband for a continuance of the hearing on the motion to vacate the decree. He stated as grounds for the motion that he desired to take and offer in evidence the depositions of the doctors in Texas. The court then advised him that such depositions would not be received except upon the condition above stated. No depositions were in fact taken, none were offered in evidence, and no offer of proof was submitted. Even assuming that these necessary requisites were present and that the question argued was properly presented, the court did not err in imposing the condition. Rule 35 R.C.P. Colo. expressly provides for the procedure which the trial court indicated would be followed as a condition precedent to the receipt in evidence of the testimony which the husband's attorney said he would present at a future time. The husband in this instance, as in all others, ignored the trial court's order. Even prior to the adoption of our Rules of Civil Procedure there was ample authority for the requirement that the husband submit to examination. *Western Glass Manufacturing Co. v. Schoeninger,* 42 Colo. 357, 94 Pac. 342; 17 Am. Jur. 52.

 Fifth: *Where one who has pertinent information concerning the value of property which is involved in litigation to which he is a party wilfully leaves the jurisdiction of the court and deliberately withholds the evidence which he alone is able to produce, can he thereafter complain that the court committed error in dealing with said property on the basis of the evidence that was available?*

This question is answered in the negative. Counsel for the husband state in their brief: "The value of the ranch and personal property in Colorado was ascertainable and fairly certain and fixed. The court awarded all of the

property within this jurisdiction to the plaintiff for herself and the children and provided for a possible deficiency judgment against the defendant in the event that plaintiff paid the mortgages on the property. On the other hand the court did not have before it sufficient and competent evidence in order to determine the value of the oil royalties held in trust for the defendant in Texas."

If in fact the court was not fully advised as to the value of the oil royalties, the husband alone is to blame. He and his Texas advisors had ample time to supply the information and failed to do so. Indeed, the failure of the husband to produce records and testimony as to the value of the property, where he and those subject to his command had particular knowledge, gives rise to an inference or presumption that such testimony would not be favorable to him or sustain his contention. *Commercial Standard Ins. Co. v. Rinn,* 100 Colo. 76, 65 P. (2d) 705.

The judgment is affirmed.