**Miriam WINTERS, on behalf of herself and all other persons similarly situated, Petitioner,**

**v.**

**Hon. Anthony J. TRAVIA, United States District Judge, Respondent.**

**Miriam WINTERS, on behalf of herself and all other persons similarly situated, Petitioner,**

**v.**

**Alan D. MILLER, M. D., Individually and as Commissioner of Mental Hygiene of the State of New York, et al., Respondents.**

**No. 883, Docket 74–1163.**

United States Court of Appeals, Second Circuit.

Argued Feb. 13, 1974.

Decided April 1, 1974.

---

1. Quoting Sullins v. United States, 389 F.2d 985, 989 (10th Cir. 1968), opinion of Judge Lewis concurring and dissenting.

Jonathan A. Weiss, New York City (Bruce J. Ennis, New York Civil Liberties Union, New York City, on the brief), for petitioner.

Joel H. Sachs, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, of counsel), for respondents Miller and O'Neill.

Before ANDERSON, MANSFIELD and OAKES, Circuit Judges.

PER CURIAM:

■ This petition for a writ of mandamus or prohibition, 28 U.S.C. § 1651(a), was brought by the plaintiff in a civil rights action to recover damages allegedly sustained as a result of forced medication administered her in 1968 in violation of her first amendment right to freedom of religion.[1] The trial court, in an oral ruling from the bench on January 11, 1974, later confirmed in an order signed January 22, 1974, ordered a physical and mental examination of plaintiff to take place at Brooklyn State Hospital and stayed all further proceedings until the results of the test. She likewise objects to this examination on religious grounds, and points out that her "physical condition is not and has never been involved in this case." Beyond this, on oral argument before us plaintiff's counsel was willing to and did represent and agree that the only present mental problem of plaintiff allegedly caused by the 1968 forced medication is "an unpleasant memory," this memory going to show the severity of the past suffering. Thus plaintiff is willing to abandon any claim that any present or anticipated physical or mental

---

[1]. Plaintiff complained as a practicing Christian Scientist who was given medication consisting primarily of tranquilizers while an involuntary patient at Bellevue Hospital Center and Central Islip State Hospital. Her complaint was held to state a cause of action in Winters v. Miller, 446 F.2d 65 (2d Cir.), cert. denied, 404 U.S. 985, 92 S.Ct. 450, 30 L.Ed.2d 369 (1971). See generally Dubnoff v. Goldstein, 385 F.2d 717 (2d Cir. 1967).

disability or condition was caused by the 1968 treatment on which her case is based.[2] Under these circumstances we do not see what purpose could be served by a Rule 35 examination which under its own terms may be ordered only "[w]hen the mental or physical condition . . . of a party . . . is in controversy. . . ." Moreover, while the underlying constitutionality of Rule 35 is not in question, as it was in Sibbach v. Wilson & Co., 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941) (5–4 decision), and Schlagenhauf v. Holder, 379 U.S. 104, 114, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), and while Rule 35 is not limited in application to actions for personal injuries, Beach v. Beach, 72 U.S. App.D.C. 318, 114 F.2d 479 (1940); *but cf.* Wadlow v. Humberd, 27 F.Supp. 210 (W.D.Mo.1939), the required showing of "good cause" for the examination and that the condition of the party be "in controversy" are *not* mere formalities. Schlagenhauf v. Holder, 379 U.S. at 118, 85 S.Ct. 234, 13 L.Ed.2d 152. This case is like Coca-Cola Bottling Co. v. Torres, 255 F.2d 149, 153 (1st Cir. 1958), where, in a suit for damages for injuries sustained by drinking from a bottle containing the proverbial putrefied mouse, the court upheld denial of a physical examination on the basis that the plaintiff was not seeking damages for any present suffering but only for past physical injury and emotional disturbance, the remembrance of the bad taste going only toward showing the severity of that plaintiff's past suffering. Mandamus lies here to correct an abuse of discretion in ordering the examination, Schlagenhauf v. Holder, 379 U.S. at

110, 85 S.Ct. 234, 13 L.Ed.2d 152, under the "special" circumstances of this case.[3]

It is true that petitioner here sought a protective order against the taking of her deposition because of the mental anguish it would allegedly cause. This does not, however, by itself place her mental condition in controversy; whether the court will grant or deny the protective order (seeking primarily to have her deposition taken by written interrogatories) has not yet been determined and is not, therefore, a consideration presently before this court.

■ Petitioner also argues that the case should be transferred to a district judge other than the one who dismissed her claim in the first instance. Even though Rule 34 of the General Rules of the United States District Courts for the Southern and Eastern Districts of New York provides for conduct of proceedings by the original judge if the proceedings *do not* require the trial of an issue of fact, we are reluctant to read it as per se disqualifying the judge in cases where there *is* an issue of fact to be tried, and we are reluctant to exercise our undoubted power for transfer except under the most compelling circumstances. *See* Meetings & Expositions, Inc. v. Tandy Corp., (2d Cir. 1974), 490 F.2d 714, 715; Taylor v. United States, 487 F.2d 307 (2d Cir. 1973). Here the judge was requested to transfer the case to an another judge and, petitioner's counsel's affidavit alleges, the judge granted the motion for a physical and mental examination without "bothering" to read the arguments and authorities in a brief submitted apparently the day before the hearing.[4] If

---

2. Consequently, our grant of this petition is conditioned on that being the case.

3. As a Christian Scientist plaintiff had registered her objection to the initial physical examination given her at Bellevue Hospital, as the now reversed *judgment dismissing the* complaint in the first instance discloses, 306 F.Supp. 1158, 1160 (E.D.N.Y.1969). Were she forced now to undergo a physical and mental examination to prove her claim, the court would be requiring of her some of the

same treatment which was the reason for her suit in the first instance.

4. The Assistant Attorney General asserts that although respondent's motion papers and accompanying memorandum were served on December 14, 1973, petitioner did not serve her reply until January 11, 1974, the day of oral argument, which is confirmed by the court file, and that Judge Travia, after hearing argument, informed the parties that on the basis of his own thorough independent re-

this indeed took place, and without reason or justification, such judicial conduct is the very kind of thing that calls to mind Farrer Herschell's well-known retort at the Bar when Sir George Jessel attempted to cut him short in argument: "Important as it was that people should get justice, it was even more important that they should be made to feel and see that they were getting it." 2 J. Atlay, Victorian Chancellors 460 (1908). On remand, doubtless, the district judge will give very serious consideration to whether transfer would not serve the appearance of justice and thereby help assure its existence.

Petition for mandamus granted and cause remanded for proceedings consistent herewith.

MANSFIELD, Circuit Judge (concurring and dissenting):

I concur in the denial of transfer of this case to another district judge. However, I would go further and hold that there was no abuse of discretion or usurpation of power on the part of the district court warranting issuance of the extraordinary remedy of mandamus at all. On the contrary his order granting an examination of petitioner pursuant to Rule 35, F.R.Civ.P., was supported by a showing of good cause and well within his discretionary powers. Petitioners' "constitutional" claim to be relieved of such an examination, is nothing more than a smokescreen which has the effect of obstructing justice and denying respondents the fair trial to which they are entitled under the Federal Rules of Civil Procedure.

Petitioner's complaint alleges that the medication wrongfully forced upon her by respondents has "caused me great emotional stress and anguish, pain and suffering, indignity and humiliation," and "caused me to become physically ill," for all of which she seeks $50,000 damages. In an affidavit sworn to as recently as November 27, 1973, she further states under oath that "the pain inflicted on me by the doctors in the hospital caused me a great deal of mental anguish . . . also this case had made me undergo a great deal of suffering." These allegations are denied by the respondents. Thus plaintiff's mental and physical condition is clearly in controversy.

Petitioner having thus put her mental and physical health squarely in controversy, it seems to me to be elementary that "good cause" exists within the meaning of Rule 35, F.R.Civ.P., for the conduct of a physical and mental examination of petitioner for the purpose of determining whether she has suffered any of the physical and mental injuries alleged and, if so, whether they are attributable to the alleged forced medication or to some other causes. As the Supreme Court said in the celebrated case of Schlagenhauf v. Holder, 379 U.S. 104, 119, 85 S.Ct. 234, 243:

"A plaintiff in a negligence action who asserts mental or physical injury, cf. Sibbach v. Wilson & Co., *supra*, places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury. This is not only true as to a plaintiff, but applies equally to a defendant who asserts his mental or physical condition as a defense to a claim, such as, for example, where insanity is asserted as a defense to a divorce action. See Richardson v. Richardson, 124 Colo. 240, 236 P.2d 121. See also Roberts v. Roberts, 198 Md. 299, 82 A.2d 120; Discovery as to Mental Condition Before Trial, 18 J. Am.Jud.Soc. 47 (1934)."

I find it rather extraordinary that the court does not adhere to the foregoing elementary principle, much less that it grants the extraordinary relief of man-

search he was satisfied that the motion should be granted. Apparently, however, no record of the oral argument or the court's comments in reference thereto was made for reasons unbeknownst to us.

damus. It is the petitioner not the respondents, who initiated this lawsuit and who seeks damages. While it may offend her religious principles as a Christian Scientist to submit to physical or mental examination, to deny the examination would violate respondents' right to a fair trial. Under such circumstances petitioner, by seeking relief, waives the right she might otherwise have had to refuse an examination, whether or not that right be labelled "constitutional" because it stems from her religious beliefs. She must abide by basic principles of justice as articulated in the Federal Rules of Civil Procedure.

The holdings of Schlagenhauf v. Holder, *supra,* and Coca-Cola Bottling Co. v. Torres, 255 F.2d 149 (1st Cir. 1958), are not to the contrary and are perfectly consistent with the requirement that petitioner submit to examination in the present case. In *Schlagenhauf* a Rule 35 examination was denied on the ground that Schlagenhauf had "not affirmatively put into issue his own mental or physical condition." After stating (see *supra*) that an examination would be mandated in the case of a plaintiff who claimed mental or physical injury, the court continued as follows:

> "Here, however, Schlagenhauf did not assert his mental or physical condition either in support of or in defense of a claim. His condition was sought to be placed in issue by other parties. Thus, under the principles discussed above, Rule 35 required that these parties make an affirmative showing that petitioner's mental or physical condition was in controversy and that there was good cause for the examinations requested. This, the record plainly shows, they failed to do."

In *Coca-Cola Bottling Co.,* after a nonjury trial the court of appeals properly refused to disturb the trial judge's exercise of his broad discretion in denying a Rule 35 examination as lacking a sufficient showing of good cause where the plaintiff had affirmatively asserted that he had fully recovered from his injuries and was not claiming any damage for his present physical condition. Here, on the other hand, plaintiff is claiming mental and physical injuries as a result of the medication and the court has interfered—in my view without warrant —with the trial judge's exercise of his broad discretion.

It is true that upon oral argument petitioner's counsel indicated that she might be willing to withdraw her claim for present physical and mental injury (except for the "unpleasant memory" of her earlier enforced medication). However, he advised that he would first have to consult with his client and obtain authority from her before waiving any such claim. Since the argument no such waiver has been furnished and, as far as the record is concerned, petitioner is still claiming both present and past mental and physical suffering.

Even assuming that such a waiver of present physical or mental suffering were forthcoming it would not justify our interference with the district judge's exercise of his discretion to order an examination pursuant to Rule 35.[1] If petitioner continued to assert a claim for past mental and physical injury, which presumably would cover the period up to the day before the waiver, a physical and mental examination, far from being useless or meaningless, might shed light on the validity of her claim and the nature and extent of any injuries sustained by her in the past. We have frequently, in other contexts, admitted into evidence expert medical opinion, based on the results of a recent examination, for the purpose of determining past mental and physical condition.[2] Exam-

---

1. The examinations of petitioner conducted during the period of her alleged involuntary hospitalization in 1968, while relevant, are hardly sufficient, standing alone, to determine whether she has suffered any mental or physical injuries during the past first years as a result of that hospitalization.

2. Evidence of subsequent condition is relevant circumstantial evidence of a condition

ination by a psychiatrist, for instance, might reveal that petitioner's mental condition had pre-dated her enforced medication and that the treatment served to alleviate rather than aggravate that condition.

For the foregoing reasons the trial judge's order granting a physical and mental examination of the plaintiff was well within his broad discretion and, in my view, this court's interference with his exercise of that discretion represents an unwarranted and mischievous use of mandamus power.

at a prior time. J. Wigmore §§ 190, 225 (3d ed. 1940). For instance, earlier mental condition may be evidenced by proof of mental condition at a later time, Hoisington v. United States, 127 F.2d 476 (2d Cir. 1942); Hart v. United States, 76 U.S.App.D.C. 193, 130 F.2d 456 (1942); In re Ring's Estate, 237 Iowa 953, 22 N.W.2d 777; and evidence of present physical condition is relevant in determining physical condition at an earlier time. American Auto Rim Lock Corp. v. Cleveland Welding Co., 27 F.Supp. 559 (S.D.N.Y.1939); Bankers Trust Co. v. Higgins, 65 F.Supp. 836 (S.D.N.Y.1946).