Petitioner/Cross–Respondent:
Frank ALOI,

v.

Respondent/Cross–Petitioner: UNION
PACIFIC RAILROAD CORPORA-
TION, a Delaware company.

No. 04SC320.

Supreme Court of Colorado,
En Banc.

March 6, 2006.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, Springer & Steinberg, P.C., Michael P. Zwiebel, Denver, for Petitioner/Cross–Respondent.

Hall & Evans, LLC, Alan Epstein, C. Willing Browne, Malcolm S. Mead, Denver, for Respondent/Cross–Petitioner.

RICE, Justice.

## I. Introduction

Frank Aloi tripped over a loose rubber mat and was injured while working as a conductor for Union Pacific Railroad (UP). Aloi brought a personal injury action against UP. Prior to trial, UP destroyed documents relevant to the litigation. As a sanction for spoliation of evidence, the trial court instructed the jury it could draw an inference that the evidence contained in the destroyed documents would have been unfavorable to UP. The trial court gave the adverse inference instruction three times, one time interrupting a cross-examination to provide the instruction. The jury returned a verdict for Aloi, and UP appealed. The court of appeals reversed the trial court's judgment and held that the trial court did not err in its decision to give an adverse inference instruction, but the trial court committed reversible error in the manner in which it gave the instruction. We granted certiorari.[1]

Upon review, we first hold that where the trial court found that UP had willfully destroyed relevant evidence, the trial court did not abuse its discretion by providing the jury with an adverse inference instruction. Second, we hold that the trial court did not abuse its discretion by repeating the adverse inference instruction and by interrupting a cross-examination to give the instruction. We affirm in part and reverse in part the decision of the court of appeals, and we remand the case to the court of appeals for consideration of remaining issues.

## II. Factual and Procedural History

On August 27, 1998, Union Pacific Railroad (UP) assigned Frank Aloi to conduct a train from North Platte, Nebraska to Missouri Valley, Iowa. Before the train departed, Aloi tripped and fell while descending interior stairs on the locomotive. After examining the stairwell, Aloi discovered a loose rubber mat, which covered a vertical riser on a step.

After Aloi told the locomotive's engineer that he had tripped on the loose rubber mat, the engineer inspected the stairwell. Later that day, Aloi telephoned the UP manager of yard operations and reported that he had tripped on the stairs. Within a couple hours of receiving Aloi's phone call, the UP yard manager and a UP safety manager inspected the locomotive and took photographs. Later that day, the locomotive engineer completed an engineer's inspection form on which she documented the loose mat as a "tripping hazard."

The morning after Aloi returned from his shift, he filed a personal injury report with UP stating that he had tripped on a loose rubber riser and had sustained injuries. Within a week of the accident, Aloi's attorneys notified UP that Aloi would file a personal injury claim against the railroad.[2]

During discovery, UP was unable to produce several documents that pertained to inspections and maintenance performed on the locomotive prior to Aloi's fall and documents that pertained to inspections and maintenance performed on the locomotive after Aloi's fall. Federal railroad and locomotive safety standards require carriers to make inspection reports and maintain the records for 92 days. 49 C.F.R. § 229.21 (2005).[3] Pursuant to this regulation, UP em-

1. We granted certiorari on the following issues:

 1. Where the trial court found that the defendant had willfully destroyed relevant evidence and correctly determined that an instruction on spoliation of evidence was thus warranted, did the court err in repeating such instruction during the course of trial as a sanction for defendant's destruction of evidence.

 2. Whether the trial court improperly instructed the jury it could draw an adverse inference from defendant's missing documents.

2. Aloi filed suit pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. (2005) and the Federal Locomotive Inspection Act, 49 U.S.C. § 20701 et seq. (2005).

3. Where statutes have remained substantially unchanged since the events at issue, for the reader's

ploys a 92–day document retention policy. When someone reports an accident, a UP claims agent should recover the relevant records before the 92–day period expires in order to prevent their destruction. Because of a failure that UP attributed to a change in personnel, the claims agent assigned to follow Aloi's accident did not collect the inspection reports or other maintenance records concerning the locomotive before the 92–day period expired. Consequently, UP destroyed the documents.

Before trial, UP filed a motion in limine to exclude evidence or arguments regarding the missing documents. In turn, Aloi filed a motion requesting that the trial court provide the jury with an adverse inference instruction regarding spoliation of evidence both at the close of Aloi's case-in-chief and at the close of all evidence with the other jury instructions. The trial court denied UP's motion and granted Aloi's motion, ruling that it would instruct the jury that it could draw an adverse inference that the evidence contained in the missing documents was unfavorable to the railroad.

Subsequently, UP amended its answer and admitted negligence in failing to properly inspect and maintain the stairwell. UP, however, denied that its negligence caused Aloi's injuries and argued that, from a human factors perspective, Aloi's foot would not have contacted the riser and caused him to fall. The trial was limited to determining causation and damages.

On the morning trial began, UP renewed its motion in limine and argued that because it conceded negligence, the missing documents were not relevant to any issue at trial and evidence regarding the missing documents would only serve to prejudice UP. The trial court denied this motion.

Although during pretrial the trial court ruled on the adverse inference instruction without making any specific findings, before the trial court first gave the adverse inference instruction, the trial court stated, "It's reasonable ... to infer that destruction was willful and designed to impede, hinder and obstruct the ability of the plaintiff to prove

the very issues that he has the burden of proving at trial."

Three times throughout the course of the trial, the court instructed the jury that it could draw an adverse inference from the fact UP destroyed locomotive reports. At the close of Aloi's case-in-chief, the trial court first read the following instruction to the jury:

It is the duty of a party not to take action that will cause the destruction or loss of relevant evidence, hindering the other side from making its own examination and investigation of all potentially relevant evidence relating to whether that party's fault caused the incident in question. You are instructed you may infer, by reason of the Defendant's failure to produce these documents, that the evidence contained in such documents was unfavorable to Defendant.

Four days later, during cross-examination, Aloi's attorney questioned UP's human factors expert regarding whether the missing inspection reports would have aided his investigation. The human factors expert indicated that he never received the reports and that he could not provide a "yes or no" answer. In response to the witness's indirect answer, the trial court twice instructed the witness to answer the question. After the expert testified that additional information would not have helped him, the trial court sua sponte provided the adverse inference instruction a second time. The trial court told the jury:

I've already instructed the jury that they're going to get a final instruction at the end of the case telling them where a party has destroyed evidence and it's not available to the other side, they're entitled to draw an adverse inference if the information would have been unfavorable to the person who destroyed it, or in this case, the company or entity that destroyed it.

The trial court provided the adverse inference instruction for the third time as part of the instructions given to the jury at the close of all evidence.

The jury returned a verdict in favor of Aloi and awarded six million dollars in damages.

convenience, this opinion cites to the current codification.

UP filed an appeal and argued, among other claims, that the trial court abused its discretion both by issuing the adverse inference instruction and by repeating the instruction throughout the trial.

In *Aloi v. Union Pacific Railroad,* No. 02CA2046 & 03CA0234, 2004 WL 743953 (Colo.App. Apr. 8, 2004), the court of appeals first held that the trial court did not abuse its discretion in giving an adverse inference instruction. *Id.,* slip op. at 4. Second, however, the court held that the trial court committed reversible error by repeating the instruction and interrupting cross-examination of the human factors expert, thereby interjecting itself into the advocacy process on Aloi's behalf. *Id.* Because the court determined that the additional claims UP raised on appeal were not likely to arise on retrial, the court declined to consider them. *Id.* The court of appeals reversed the judgment of the trial court and remanded the case for a new trial. *Id.*

Aloi and UP sought further review, and we granted certiorari.

### III. Analysis

#### 1. The Adverse Inference Instruction

 The ability to provide the jury with an adverse inference instruction as a sanction for spoliation of evidence derives from the trial court's inherent powers. *See Pena v. District Court,* 681 P.2d 953, 956 (Colo.1984) (stating that trial courts possess "all powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence, and integrity, and to make its lawful actions effective"). A trial court has broad discretion to permit the jury to draw an adverse inference from the loss or destruction of evidence. *See Rodriguez v. Schutt,* 896 P.2d 881, 884 (Colo.App. 1994) (citing *Glover v. BIC Corp.,* 6 F.3d 1318 (9th Cir.1993)); *Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156 (4th Cir.1995). Accordingly, we will not overturn the trial court's imposition of an adverse inference unless the sanction is manifestly arbitrary, unreasonable, or unfair. *See People v. Welsh,* 80 P.3d 296, 304 (Colo.2003) (reviewing a trial court's evidentiary determination for an abuse of discretion).

 In determining whether the trial court abused its discretion, we must examine whether the rationales underlying the adverse inference supported giving the instruction as a sanction for spoliation. *See Nation–Wide Check Corp. v. Forest Hills Distrib., Inc.,* 692 F.2d 214, 218 (4th Cir. 1982). Colorado courts have recognized adverse inference instructions serve both a punitive and a remedial purpose. *See Rodriguez,* 896 P.2d at 884; *Pfantz v. Kmart Corp.,* 85 P.3d 564, 567 (Colo.App.2003). The punitive function serves to deter parties from destroying evidence in order to prevent its introduction at trial. *See Rodriguez,* 896 P.2d at 884. The remedial function serves to restore the putative prejudiced party to the position it would have held had there been no spoliation. *Id.*

In this case, UP argues that the trial court abused its discretion in providing the adverse inference instruction because it failed to find UP acted with a sufficiently culpable mental state. UP also argues that the trial court abused its discretion by giving the instruction without requiring extrinsic evidence regarding the content of the destroyed documents. Thus, we must determine whether the trial court abused its discretion in either respect. We turn first to the issue of the destroying party's mental state to determine whether providing the jury with an adverse inference instruction where a party has destroyed evidence willfully accords with the inference's punitive and remedial rationales.

#### A. Mental State of the Party Responsible for the Destruction of Evidence

UP argues that the trial court should only have discretion to provide an adverse inference instruction where the proponent of the instruction demonstrates that the evidence was destroyed in bad faith. UP claims that because Aloi made no showing of bad faith destruction, the trial court abused its discretion by giving the instruction. In response, Aloi argues that the trial court's finding that UP destroyed evidence willfully justifies the instruction.

Courts in other jurisdictions are divided with regard to whether a trial court must find a party destroyed evidence in bad faith before it has discretion to impose an adverse inference instruction. Some courts have held that a trial court may only impose an adverse inference where there was bad faith because "[m]ere negligence ... does not sustain an inference of consciousness of a weak case." *Vick v. Tex. Employment Comm'n*, 514 F.2d 734, 737 (5th Cir.1975) (quoting McCormick, *Evidence* § 273 at 660–61 (1972)). *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir.1997) ("The adverse inference must be predicated on the bad faith of the party destroying the records."); *S.C. Johnson and Son, Inc. v. Louisville & Nashville R.R.*, 695 F.2d 253, 258 (7th Cir.1982) (holding that a trial court must find a party destroyed evidence in bad faith before it imposes an adverse inference).

In other jurisdictions, trial courts have the discretion to provide an adverse inference instruction under a wider range of circumstances without a showing of bad faith. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993) ("[A] trial court also has the broad discretionary power to permit a jury to draw an adverse inference from the destruction or spoliation against the party or witness responsible for that behavior ... however, a finding of 'bad faith' is not a prerequisite to this corrective procedure. Surely a finding of bad faith will suffice, but so will simple notice of 'potential relevance to the litigation." ') (internal citations omitted); *Banks v. Sunrise Hospital*, 120 Nev. 822, 102 P.3d 52, 59 (2004) (holding that the trial court did not abuse its discretion by instructing the jury it could draw an adverse inference concerning the condition of a hospital's equipment based on the hospital's failure to preserve the equipment, even though there was no evidence that the hospital willfully disposed of the equipment in order to frustrate discovery); *Kurczy v. St. Joseph Veterans Ass'n*, 820 A.2d 929, 946 (R.I.2003) ("[D]eliberate or negligent destruction of relevant evidence by a party to litigation may give rise to an inference that the destroyed evidence was unfavorable to that party ... a showing of bad faith is not required before the fact finder will be permitted to draw this inference.").

We discern no useful distinction between destroying evidence in bad faith and destroying evidence willfully. The last time this court examined a trial court's imposition of an adverse inference we did not adopt a bright line approach of requiring a showing of bad faith, and we decline to adopt such an approach now. *See Richardson v. Richardson*, 124 Colo. 240, 252, 236 P.2d 121, 127 (1951) (upholding a trial court's decision to impose an adverse inference without discussing a bad faith prerequisite).

■ The broader approach, which does not require a showing of bad faith, more closely serves the rationales behind the adverse inference instruction. With respect to the inference's remedial purpose, it does not matter whether a party destroyed evidence in bad faith or whether a party destroyed evidence willfully because, regardless of the destroying party's mental state, the opposing party will suffer the same prejudice. *See Hamann v. Ridge Tool Co.*, 213 Mich. App. 252, 539 N.W.2d 753, 756–57 (1995). Likewise, the broader approach serves the inference's punitive purpose. Imposing an adverse inference where a party willfully destroys evidence will deter parties from destroying evidence that they know or should know will be relevant to litigation. Accordingly, providing the jury with an adverse inference instruction where the trial court finds that a party has willfully destroyed evidence serves the remedial and punitive rationales and therefore does not constitute an abuse of discretion.

■ In this case, because Aloi filed a personal injury report with the railroad the day after returning from his shift and informed UP that he intended to bring a personal injury action within a week of the accident, UP had notice that the locomotive inspection and repair documents would be relevant to litigation well before the 92–day document retention period expired. Accordingly, the trial court found that UP's failure to preserve the evidence was willful. Thus, we conclude it was not necessary for the trial court to find that UP destroyed evidence in bad faith; the trial court did not abuse its

discretion by providing an adverse inference instruction where it found UP willfully destroyed evidence.

## B. Content of the Destroyed Evidence

UP further argues that in the absence of bad faith the trial court should only have discretion to provide an adverse inference instruction where there is extrinsic evidence demonstrating that the destroyed evidence would have been unfavorable to the spoliator. In response, Aloi argues that the proponent of an adverse inference instruction need only demonstrate that the destroyed evidence would be relevant to a contested issue.

Similar to the issue of mental state, other jurisdictions are split as to what burden the proponent of an adverse inference instruction bears regarding the content of the destroyed evidence. *See, e.g., Nation–Wide Check Corp. v. Forest Hills Distrib., Inc.,* 692 F.2d 214, 218 (1st Cir.1982) ("The inference depends, of course, on a showing that the party had notice that the documents were relevant at the time he failed to produce them or destroyed them."); *Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 77 (S.D.N.Y. 1991) ("[S]ome extrinsic evidence of the content of the evidence is necessary for the trier of fact to be able to determine in what respect and to what extent it would have been detrimental.").

■ As a minimum threshold, we approve of the Fourth Circuit's approach: "To draw an adverse inference from the absence, loss or destruction of evidence, it would have to appear that the evidence would have been relevant to an issue at trial and otherwise would naturally have been introduced into evidence." *Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156 (4th Cir.1995). We find that this approach accords with the rationales behind the adverse inference instruction. It serves the remedial function because it minimizes the prejudice suffered by the non-destroying party. This standard also serves the punitive function because it deters destruction by placing the risk that destroyed evidence may not have been detrimental on the party responsible for the destruction. *See Richardson v. Richardson,* 124 Colo. 240, 252, 236 P.2d 121, 127 (1951)

(upholding the trial court's decision where, despite the fact that the party withholding evidence claimed the information at issue was otherwise easily ascertainable, the trial court imposed an adverse inference as a sanction against the withholding party rather than imposing on the party already prejudiced the additional burden of finding the information elsewhere).

In this case, it appears the records of locomotive inspection and maintenance would have been relevant and otherwise introduced into evidence to demonstrate the condition of the locomotive stairwell. Additionally, the records may have provided more detailed information regarding the nature of the locomotive defect, the specific repair work performed, and other information helpful to determining whether the specific defect caused Aloi's injuries. Thus, because the rationales behind the adverse inference instruction support giving an instruction where a party destroys relevant documents which otherwise would have been introduced into evidence, the trial court did not abuse its discretion by providing the instruction based on the information available regarding the contents of the destroyed documents.

In sum, because the trial court found that UP acted willfully in destroying the documents and because it appears the documents would have been relevant and otherwise introduced into evidence, we hold that the trial court did not abuse its discretion by giving an adverse inference instruction.

## 2. The Manner in which the Trial Court Gave the Adverse Inference Instruction

■ As discussed above, the trial court has wide discretion to provide an adverse inference instruction. Additionally, "the form and style of the instruction are within the trial court's discretion." *Rogers v. Westerman Farm Co.,* 29 P.3d 887, 909 (Colo. 2001). Because we have already determined that the trial court did not abuse its discretion in deciding to give an adverse inference instruction, we must next determine whether the trial court abused its discretion by giving the instruction three times and by interrupt-

ing the cross-examination of UP's human factors expert.

The court of appeals based its holding that the trial court committed reversible error on language from three Colorado Supreme Court cases, *Pizza v. Wolf Creek Ski Dev. Corp.*, 711 P.2d 671 (Colo.1985), *Polster v. Griff's of America, Inc.*, 184 Colo. 418, 520 P.2d 745 (1974), and *Pletchas v. Von Poppenheim*, 148 Colo. 127, 365 P.2d 261 (1961). First, we address the issue of repetition and the cases the court of appeals cited which involve repetition.

*Pletchas* upheld a trial court's refusal to provide an instruction tendered by the defendant because the trial court had already devised an instruction that rendered the defendant's instruction duplicative. 148 Colo. 127, 365 P.2d 261 (1961). The *Pletchas* court stated, "[r]epetition of instructions, under whatever guise, giving undue prominence to one feature of a case, is deemed bad practice and should be avoided." 148 Colo. at 131, 365 P.2d at 264. *Pizza* held that the trial court erred by giving an instruction that incorrectly stated the law and contained language repetitious of another instruction. 711 P.2d 671 (Colo.1985). In *Pizza* the court stated, "We have held in the past that it is error to give two instructions, virtually the same, which would tend to confuse the jury by overly emphasizing a defense." 711 P.2d at 680.

Although this court has made general statements discouraging repetition, we have never held that repetition of a jury instruction alone constitutes an abuse of discretion. Further, the repetition discussed in *Pletchas* and *Pizza* differs from the type of repetition we analyze in this case. *Pletchas* and *Pizza* dealt with courts repeating statements of law throughout multiple jury instructions given simultaneously at the close of all evidence. This case, however, involves a single jury instruction given at multiple times throughout the trial. Simultaneously providing multiple different instructions that explain a single principle presents a greater potential for juror confusion because it is more likely that the jury will attempt to distinguish the repetitive instructions and misinterpret them. In the case at hand, the trial court made it clear

that it was repeating the same instruction, so this potential for juror confusion did not exist. Accordingly, *Pletchas* and *Pizza* do not control our determination of whether the trial court abused its discretion.

Rather, in determining whether the trial court adequately performed its evidentiary gate-keeping task or whether it abused its discretion, we examine whether the trial court addressed appropriate objections and articulated the reasoning for its decision. *People v. Welsh*, 80 P.3d 296, 304 (Colo.2003). In explaining its decision to give the spoliation instruction at the close of Aloi's case-in-chief, the trial court stated:

> Just like we never used to give exhibits to jurors before at the end of the trial, now, in order to facilitate their comprehension, maximize their informed information, in giving instructions now, it's deemed appropriate to give interim instructions where that would be appropriate, and I've concluded that instruction would be appropriate at that point.

Furthermore, in responding to UP's objections to giving the instruction at the close of Aloi's case-in-chief, the trial court noted that "it's reasonable ... to infer that destruction was willful and designed to impede, hinder and obstruct the ability of the plaintiff to prove the very issues that he has the burden of proving at trial." Thus, it appears the trial court gave the instruction multiple times both to aid the jury's comprehension and as a sanction for UP's destruction of evidence.

Additionally, when the trial court gave the instruction for the second time, four days had passed and the jury had heard a great deal of testimony since the trial court had given the instruction at the close of plaintiff's case-in-chief. Hence, repeating the instruction was not manifestly unreasonable. Accordingly, because the trial court addressed appropriate objections and articulated the reasoning for its decision, the repetition was not manifestly arbitrary, unreasonable, or unfair. We cannot say the trial court abused its discretion in repeating the adverse inference instruction. *See Welsh*, 80 P.3d at 304.

Next, we determine whether the trial court improperly acted as an advocate. The court

of appeals cited *Polster v. Griff's of America, Inc.,* 184 Colo. 418, 520 P.2d 745 (1974), to support its conclusion that the trial court interjected itself into the advocacy process. *Polster* held that a trial court did not commit reversible error by failing to provide the jury with a cautionary evidentiary instruction where the trial counsel did not request such an instruction. 184 Colo. at 423, 520 P.2d at 748. The *Polster* court stated, "[The trial court] should not assume the role of advocate and on its own motion without request therefore, limit, comment upon, qualify, or strike evidence offered by the parties. These are the basic functions of trial counsel in our adversary system of justice . . . ." As with the language in *Pizza* and *Pletchas,* this dicta is inapplicable here because *Polster* did not hold that the trial court would have committed reversible error if it had given a cautionary instruction sua sponte. Further, *Polster* is inapposite because it does not articulate a test to guide the determination of when a trial court crosses the line into advocacy.

*People v. Adler,* 629 P.2d 569 (Colo.1981), however, does provide some guidance. In *Adler* we explained:

> When a trial judge elects to raise matters to promote a just determination of a trial, he must take great care to insure that he does not become an advocate . . . . The test which must be applied here is whether the trial judge's conduct so departed from the required impartiality as to deny the defendant a fair trial.

629 P.2d at 573. Because the trial judge interrupted Aloi's counsel's cross-examination of UP's expert witness to remind the jury of the adverse inference instruction sua sponte, this could be characterized as electing to raise a matter to "promote a just determination of a trial." Hence, we will examine whether the trial judge's conduct so departed from the required impartiality that it denied UP a fair trial.

During conferences with the attorneys, the trial court expressed concerns about UP's destruction of evidence interfering with the pursuit of truth, and the trial court was particularly concerned about the destruction of evidence interfering with Aloi's ability to cross-examine UP's human factors expert.

Therefore, it appears the trial court was motivated by a desire to remedy prejudice caused by spoliation of evidence rather than by partiality.

In addition, the interruption of the cross-examination was not so drastic as to constitute an abuse of discretion that rendered the trial court an advocate for Aloi. *See, e.g., People v. Martinez,* 185 Colo. 187, 523 P.2d 120 (1974) (holding that the trial court committed reversible error where, in the absence of the prosecutor at a hearing, the trial judge called witnesses, presented evidence, cross-examined the defense witnesses, raised objections to the defense counsel's questions, and ruled on the defense counsel's objections to the court's questioning of witnesses).

Accordingly, we hold that the trial court did not abuse its discretion in the manner in which it gave the adverse inference instruction by repeating the instruction or by interrupting the cross-examination.

## IV. Conclusion

In conclusion, we hold that the trial court did not abuse its discretion by providing the jury with an adverse inference instruction as a sanction for the spoliation of evidence where it found that UP willfully destroyed relevant evidence, which otherwise naturally would have been introduced at trial. Second, we hold that the trial court did not abuse its discretion by repeating the adverse inference instruction because the trial court addressed appropriate objections and articulated the reasoning for its decision; nor did the trial court abuse its discretion by interrupting the cross-examination because it acted to remedy prejudice and as a result did not depart from the required impartiality so as to deny the defendant a fair trial.

We affirm the court of appeals' holding that the trial court did not abuse its discretion by imposing an adverse inference instruction, and we reverse the holding that the trial court committed reversible error in the manner in which it gave the adverse inference instruction. We remand the case

to the court of appeals for consideration of the remaining issues.