Jessica R. CASTILLO, Plaintiff–Appellant,

v.

The CHIEF ALTERNATIVE, LLC, Defendant–Appellee.

No. 04CA2306.

Colorado Court of Appeals, Div. I.

April 6, 2006.

Franklin D. Azar & Associates, P.C., Trent T. King, Patricia A. Meester, Aurora, Colorado, for Plaintiff–Appellant.

Shaw & Quigg, P.C., Lewis M. Quigg, Pueblo, Colorado, for Defendant–Appellee.

MÁRQUEZ, J.

Plaintiff, Jessica R. Castillo, appeals the trial court's judgment entered on a directed verdict in favor of defendant, The Chief Alternative, LLC, after the trial court denied her motion for sanctions for spoliation of evidence. We affirm.

On January 27, 2002, plaintiff was at The Chief Alternative nightclub when a cylinder-shaped mirrored column approximately three feet in length fell and injured her. According to the manager of The Chief Alternative, the mirrored column was attached to a truss by a rod that went through the column to a motor that turned the column and was secured on the bottom with a two-inch long locknut. After the mirrored column fell, the manager found a split locknut on the floor.

In June 2003, the nightclub closed, and the manager discarded the entire apparatus, including the housing, the mirrored column, and the split locknut.

In July 2003, plaintiff filed a complaint against The Chief Alternative and against the independent contractor who made and installed the mirrored column.

Plaintiff moved for sanctions to be imposed because The Chief Alternative had discarded the mirrored column and locknut. After hearing testimony outside the presence of the jury, the trial court found at most only simple negligence. It found that The Chief Alternative's insurance company had denied liability in February or May 2003, and the court assumed The Chief Alternative "knew ... that there was a claim still out there." The court denied plaintiff's motion for sanctions, noting that when the evidence was discarded, no case had been filed, no one on behalf of plaintiff had requested to view or retain the mirrored column and locknut, and The Chief Alternative was not instructed by its insurance company to keep anything.

A default judgment was entered against the independent contractor. However, after plaintiff presented her case, the court granted The Chief Alternative's motion for directed verdict.

I.

■ Plaintiff contends that the trial court abused its discretion in denying her motion for sanctions for spoliation of evidence. Specifically, she asserts that because The Chief Alternative destroyed the evidence, it should have been precluded from raising the issue that the locknut had split and the jury should have been allowed to hear evidence regarding the spoliation and to draw inferences as to the cause of the incident. We perceive no abuse of discretion.

■ Trial courts enjoy broad discretion to impose sanctions for spoliation of evidence, even if the evidence was not subject to a discovery order permitting sanctions under C.R.C.P. 37. *Pfantz v. Kmart Corp.*, 85 P.3d 564 (Colo.App.2003). Accordingly, we will not overturn the trial court's determination unless it is manifestly arbitrary, unreasonable, or unfair. *See Aloi v. Union Pac. R.R.*, 129 P.3d 999 (Colo.2006).

■ Sanctions may be imposed both to punish a party who has spoiled evidence and to remediate the harm to the injured party from the absence of that evidence. *Pfantz v. Kmart Corp., supra; see Rodriguez v. Schutt*, 896 P.2d 881 (Colo.App.1994), *aff'd in part and rev'd in part on other grounds*, 914 P.2d 921 (Colo.1996).

■ The trial court need not find that the evidence was destroyed in bad faith; it may sanction a party who willfully destroys evidence relevant to a contested issue. *Aloi v. Union Pac. R.R., supra; see also Pfantz v. Kmart Corp., supra* (court's power to impose sanctions may be exercised even if the party has not acted intentionally; sanctions may be imposed if the conduct is reckless or grossly negligent); *Rodriguez v. Schutt, supra* (inference may be appropriate in absence of bad faith).

In *Aloi*, the Colorado Supreme Court held that the trial court did not abuse its discretion by providing an adverse inference instruction as a sanction for spoliation of evidence where it found the defendant willfully destroyed the evidence. There the plaintiff had filed a personal injury report with the defendant the day after the accident and informed the defendant within a week of the accident that he intended to bring a personal injury action. The defendant's failure to preserve evidence was found to be willful because the defendant had notice that certain documents would be relevant to litigation well before they were destroyed pursuant to a ninety-two-day document retention policy. *Aloi v. Union Pac. R.R., supra.*

*Aloi* did not specifically address whether a trial court may sanction a party for precomplaint destruction of the evidence. However, the rule announced in *Aloi*—that a party may be sanctioned for destroying evidence after notice that it is relevant to litigation— would seemingly apply regardless of whether a complaint has been filed, so long as the party knew or should have known that the destroyed evidence was relevant to pending, imminent, or reasonably foreseeable litigation. *See Shaffer v. RWP Group, Inc.*, 169 F.R.D. 19 (E.D.N.Y.1996)(adopting this rule); *see also Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68 (S.D.N.Y.1991)(the obligation to preserve evidence arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced and the party knows or reasonably should know the evidence is relevant to the action). *But cf. Palacios v. City of Oakland*, 970 F.Supp. 732 (N.D.Cal.1997)(defendants under no obligation to preserve evidence before suit was filed), *aff'd*, 152 F.3d 928, 1998 WL 383823 (9th Cir.1998) (unpublished table decision). *See generally* Jamie S. Gorelick et al., *Destruction of Evidence* § 3.12 (1989) (noting most courts have imposed sanctions for destruction of evidence only where the destruction occurs after a complaint has been filed).

According to the Gorelick treatise, courts typically impose sanctions for precomplaint destruction of evidence only in three circumstances. The first circumstance is where a clear showing has been made that the defendant knew litigation would be filed and will-

fully destroyed evidence it knew or should have known would be relevant to the case. Gorelick, *supra,* § 3.12; *see, e.g., Alliance to End Repression v. Rochford,* 75 F.R.D. 438 (N.D.Ill.1976)(plaintiffs convincingly demonstrated that defendants intentionally destroyed information after obtaining reports that plaintiffs were about to file suit); *Bowmar Instrument Corp. v. Texas Instruments Inc.,* 25 Fed. R. Serv.2d 423 (N.D.Ind.1977). The second circumstance is where a party is engaged in a series of lawsuits and destroys evidence after litigating the first lawsuit but before another lawsuit has been filed. The third circumstance is where the spoliator is the plaintiff. Gorelick, *supra,* § 3.12.

■ However, the behavior of the party moving for sanctions is an important factor for assessing whether sanctions are appropriate. Gorelick, *supra,* § 3.13; *see Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423 (2d Cir.2001)(trial court did not abuse its discretion in denying Federal Express's motion for sanctions where it was undisputed that it never contacted the plaintiff to seek an opportunity to inspect the evidence or otherwise requested that the evidence be retained); *see also In re Wechsler,* 121 F.Supp.2d 404 (D.Del.2000)(court should take into account whether party had a meaningful opportunity to examine the evidence in question before it was destroyed); *Thiele v. Oddy's Auto & Marine, Inc.,* 906 F.Supp. 158 (W.D.N.Y.1995)(party's opportunity to inspect evidence before spoliation is relevant to issue of sanctions).

Here, the evidence showed that the manager of The Chief Alternative kept the entire apparatus, including the mirrored column and the locknut, for approximately a year and a half following the incident. During this time plaintiff did not request to view or retain any of these items. The manager testified that approximately one month after the incident, he called plaintiff to inquire about her well-being and that plaintiff's father said that "she was doing okay, that her bills were being paid, that she wasn't hurt that bad, and they weren't going to sue or anything." The manager also testified that in January 2003, he spoke with The Chief Alternative's insurance company and asked "if there was anything else that they needed from [him], and they said no, nothing had been filed, or they didn't need any other paperwork from [him]." He did not specifically ask whether the insurance company needed the mirrored column. The manager also testified that he discarded the evidence when he closed The Chief Alternative in June 2003.

According to plaintiff, her attorney sent a "demand package" to The Chief Alternative's insurance company in February 2003. However, a copy of this demand package was not included in the record. There is no indication in the record that plaintiff notified The Chief Alternative that she was planning to file a complaint or that it should preserve the mirrored column. Plaintiff did not inquire about the discarded evidence until after she filed this action in July 2003.

The trial court found that, while the parties may have known that a claim was "still out there" when the evidence was discarded, apparently no case had been filed, and this destruction was, at most, simple negligence. Based on this finding, the court denied plaintiff's motion for sanctions and her request for an instruction that the jury could presume by the destruction that the product was defective.

Based on the authorities discussed above, we perceive no error in the trial court's determination. Plaintiff does not dispute that the evidence was preserved for a year and a half after the incident and that she had not requested to see the mirrored column or to have it preserved before it was discarded. In contrast to *Aloi,* plaintiff did not provide The Chief Alternative with clear, prompt notice that a complaint would be filed.

Although a sanction may be appropriate in the absence of bad faith, there is no evidence that the manager's conduct constituted willful conduct as described in *Aloi.* We note that plaintiff also does not dispute that The Chief Alternative was closing its business when the evidence was discarded. Moreover, the circumstances described above in which courts typically sanction parties for precomplaint destruction of the evidence do not exist here.

Accordingly, because we cannot conclude that the court's denial of plaintiff's motion for sanctions was manifestly arbitrary, unreasonable, or unfair, we perceive no abuse of discretion.

## II.

■ Plaintiff also asserts that the trial court erroneously directed the verdict against her after improperly denying her motion for sanction for spoliation of evidence. We disagree.

■ A directed verdict should only be granted in the clearest of cases. A court considering such a motion must view the evidence and all reasonable inferences rising legitimately therefrom in the light most favorable to the nonmovant. If the evidence when viewed in this light is insufficient to support a verdict in favor of the nonmoving party, the issue should not be submitted to a jury. In such circumstances, a directed verdict should be entered. *Huntoon v. TCI Cablevision, Inc.,* 969 P.2d 681 (Colo.1998).

In granting the directed verdict, the trial court here noted that the premises liability statute was plaintiff's exclusive remedy and that under § 13–21–115(3)(c)(I), C.R.S.2005, "an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." The court explained that the only evidence of the cause of the injury was the testimony by plaintiff's expert, who opined that either the locknut cracked during installation or the size of the locknut was insufficient to support the weight of the column.

The trial court determined that there was insufficient evidence to support a finding that The Chief Alternative knew or should have known of the possible problems with the locknut. The court noted that the whole fixture appeared to be working properly for at least one month prior to plaintiff's injuries, that it was visually inspected daily, and that there was no indication whatsoever of a problem. The court also found insufficient evidence to submit to the jury the question whether The Chief Alternative failed to use reasonable care to protect against those particular dangers.

Although plaintiff does not dispute that § 13–21–115(3)(c)(I) applies, she contends that it is a jury question whether The Chief Alternative knew or should have known there was a dangerous condition and failed to take reasonable steps to prevent it. Plaintiff submits that The Chief Alternative created a "dangerous condition" by hanging a heavy, homemade object directly above the dance floor and that the "dangerous condition" was not the problem associated with the locknut. She further asserts that the following evidence would support a jury finding in her favor: (1) the mirrored column was homemade; (2) the manager knew the column could kill a person if it fell; and (3) The Chief Alternative failed to attach a safety cable to the column itself.

We agree that plaintiff did not present any evidence to support a jury finding that The Chief Alternative knew or should have known of any dangers related to the locknut and failed to use reasonable care to protect against those particular dangers. Plaintiff's expert testified that a possible cause of the incident was that some part of the connection at the top of the cylinder failed. However, there is no evidence that The Chief Alternative knew or should have known about any failed connection.

In addition to testimony of witnesses, plaintiff had access to an accident report from the club, a police incident report, and photographs of the mirrored column, and there is no extrinsic evidence tending to show that the items destroyed would have placed The Chief Alternative on notice of any defect. None of the evidence cited by plaintiff suggests otherwise.

We disagree with plaintiff's suggestion that a hanging mirrored column is, in and of itself, a dangerous condition. None of plaintiff's witnesses, including her construction and engineering expert, testified that a homemade mirrored column is inherently a dangerous condition. Evidence that the manager knew the column could kill a person if it fell does not indicate that the mirrored column was per se a dangerous condition. Similarly, there was no testimony that the

fact the safety cable was attached to the housing—and not to the column itself—made the apparatus inherently dangerous.

The judgment is affirmed.

Judge DAILEY and Judge ROMÁN concur.