FILED
United States Court of Appeals
Tenth Circuit

August 17, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

RUSSELL J. JOHNSON and
JENNIFER JOHNSON,

Plaintiffs - Appellants,

v.

LIBERTY MUTUAL FIRE
INSURANCE COMPANY, a
Wisconsin corporation,

Defendant - Appellee.

No. 10-1132

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:08-cv-01137-MSK-MJW)**

---

Bradley A. Levin (Ross B.H. Buchanan, with him on the briefs), Roberts, Levin, Rosenberg, PC, Denver, Colorado, for Plaintiffs - Appellants.

Hilary D. Wells (Brian J. Spano, with her on the brief), Rothgerber, Johnson, & Lyons, LLP, Denver, Colorado, for Defendant - Appellee.

---

Before **HARTZ, McKAY**, and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

This case is about a pair of missing tail lights and the limits of reasonable foreseeability. Russell and Jennifer Johnson blame Liberty Mutual for failing to hold onto a pair of tail lights that, they say, would have helped them win a personal injury lawsuit they wanted to bring. Problem is, the Johnsons never asked Liberty Mutual to keep the tail lights, never mentioned their intent to sue, and allowed years to pass without a word. Now they fault the company for failing to divine their hidden (and perhaps not yet formed) intentions. Because the Johnsons, quite unsurprisingly, cannot identify a statutory or contractual basis for their claim, they ask us to create one for them in the common law of tort. But, we hold, the common law doesn't require such uncommon foresight.

One early summer morning, Russell Johnson was driving a pickup truck when he was rear-ended. Michael Dellock, an employee of Zimmerman Truck Lines, did it. When the police arrived, Mr. Dellock told them he crashed into Mr. Johnson's truck because the latter's trailer's tail lights weren't working — and, based on this account, the police issued Mr. Johnson a traffic citation. Recognizing the potential evidentiary importance of the tail lights, Mr. Johnson's insurance company — Liberty Mutual — took them to have them tested. After a lab report suggested that the lights *were* operating at the time of the crash, Liberty Mutual succeeded in fending off liability claims threatened by Zimmerman and Mr. Dellock's insurance companies. Even better, Liberty Mutual managed to get Zimmerman's insurance company to pay for the damage to Mr. Johnson's truck

- 2 -

and trailer. And to top it off, the police dismissed Mr. Johnson's citation. With all that accomplished now some two years after the accident, Liberty Mutual closed its file. Jennifer Johnson, Mr. Johnson's wife, herself later admitted that by this time she had "kind of forgot about" the tail lights.

But the end of these lurking lawsuits only marked the birth of another. Two years after Liberty Mutual closed its file, and some nearly four years after the accident, Mr. and Mrs. Johnson decided to turn the tables on Zimmerman and Mr. Dellock and sue them for personal injuries. To help their case, the Johnsons asked Liberty Mutual to return the tail lights. But by this time the lights were long gone. Gone because, over all the intervening years, the Johnsons had never asked Liberty Mutual to return or retain the lights, and never mentioned their potential interest in suing. Ultimately, the Johnsons settled their personal injury claims but, they say, at a deep discount because of the missing tail lights.

And this is the nub of our case. Arguing they could have obtained more money from Zimmerman and Mr. Dellock had Liberty Mutual held onto the tail lights, the Johnsons filed a diversity suit in district court under Colorado law. But the Johnsons were apparently unable to find any contractual or statutory cause of action to fasten their claim onto, so they turned to the common law of tort. They argued that Liberty Mutual was liable for "spoliation of evidence," that the company acted negligently as a bailee, and that the company engaged in bad faith breach of its insurance duties. The district court, however, granted

Liberty Mutual's summary judgment motion on the spoliation and bailee claims, and the company's Rule 12(b)(6) motion to dismiss on the bad faith claim. The Johnsons now appeal, arguing that the district court should be reversed across the board. We disagree.

The Johnsons seek to use the common law in many uncommon ways. They ask us to recognize and enforce an independent spoliation tort, but the Colorado courts have yet to go so far. They say Liberty Mutual neglected its duties as the bailee of their property, but it's unclear from the record whether the Johnsons even owned the tail lights by the time they asked for them. They argue that Liberty Mutual tortiously (in bad faith) disregarded an insurance obligation, but it's hardly obvious what obligations Liberty Mutual had *as an insurer* to help the Johnsons anticipate and prepare for an affirmative lawsuit; no one, after all, suggests that Liberty Mutual had a contractual or statutory duty as *insurer* to pursue a lawsuit against Zimmerman and Mr. Dellock for the Johnsons.

But all these questions pale beside another. To prevail on any of their (putative) tort claims, the Johnsons must show that their claimed damages were reasonably foreseeable — that Liberty Mutual knew or should have known that the destroyed tail lights would be relevant (valuable) evidence in their future affirmative litigation. *See*, *e.g.*, *Castillo v. Chief Alt., LLC*, 140 P.3d 234, 236 (Colo. App. 2006) (discussing judicial sanction for spoliation); *Vanderbeek v. Vernon Corp.*, 50 P.3d 866, 870-72 (Colo. 2002) (discussing reasonable

foreseeability in tort law generally). And this the Johnsons can't do as a matter of law — either on the evidence at summary judgment (in their spoliation and bailment claims) or on their pleadings at the motion to dismiss stage (in their bad faith claim).

The Johnsons can't because we haven't yet reached the stage where everyone is bound by the common law to gird for more litigation even after everything appears settled. Ours may be a litigious world. Lawsuits may tend to beget more lawsuits. But, in the absence of any statutory or contractual duty, it is unreasonable to expect anyone to hold onto apparently unwanted property for two years after all claims involving it appear to have been resolved. The common law rarely demands such uncommon foresight. *Compare Aloi v. Union Pac. RR. Corp.*, 129 P.3d 999, 1003-04 (Colo. 2006) (en banc) (defendant-spoliator sanctioned because it had notice of the lawsuit where plaintiff told the company of his intent to sue), *with Castillo*, 140 P.3d at 237 (denial of sanctions for spoliation where plaintiff never notified the defendant of the litigation); *see also Talmadge v. State Farm Mut. Auto. Ins. Co.*, No. 96-8044, 1997 WL 73476, *4 (10th Cir. Feb. 21, 1997) (unpublished) (holding that insurance company had no duty to preserve evidence where insured never told company of intent to sue).

The Johnsons protest that there's more to the foreseeability story we need to consider. They point out that Liberty Mutual had an internal policy requiring it to preserve the tail lights for six years after closing its claims file — in time for

the Johnsons to use the lights in their affirmative litigation. But this line of argument conflates two very different things. When you violate a corporate policy you may well be in trouble with your boss, but that doesn't necessarily mean you have committed a tort. Our role as a court of law is not to enforce private corporate policy but to assess public legal liability. And the Johnsons never show how, in this case, the existence of the one (the corporate retention policy) might be evidence of a violation of the other (the law). They never explain how Liberty Mutual's adoption of an internal retention policy establishes that it did foresee or should have foreseen their not yet mentioned (and perhaps not yet formed) plan to bring an affirmative lawsuit. And they don't because they can't. No one suggests that Liberty Mutual had a contractual or statutory duty to pursue that affirmative case for the Johnsons. And it is far more likely Liberty Mutual adopted its internal retention policy not to help out others with *their own* lawsuits, but to ensure it could process and defend insurance claims that *it had* a contractual or statutory duty to address. *See, e.g.*, *Talmadge*, 1997 WL 73476, at *4 n.10.

The Johnsons reply by protesting that the district court didn't allow them to introduce an expert affidavit that would have helped with their bailment claim. But the Johnsons also acknowledge that their expert would have offered no new *facts* for the district court to consider, only opinion. So, fact-wise, everything there was to know on the foreseeability question was known by the time of the

district court's ruling.  And those facts were undisputed.  No doubt, a trial still might have been warranted if reasonable jurors could have drawn conflicting inferences from the evidence.  But that isn't our case.  Expert affidavit or not, the district court was right that the undisputed facts of this case are insufficient as a matter of law to establish reasonable foreseeability.

In closing, the Johnsons suggest that the district court was wrong to dismiss their bad faith claim so early, at the motion to dismiss stage.  They point out that their complaint alleged Liberty Mutual "knew, or should have known, of [the tail lights'] evidentiary significance to the Johnson[s'] claims."  Amd. Compl. at 9.  But this is simply a naked legal conclusion, backed by no well-pleaded facts, and as such hardly enough to state a claim for relief.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).  Neither is it particularly surprising that the Johnsons failed to plead facts in their complaint suggesting that Liberty Mutual could have reasonably anticipated their personal injury lawsuit.  As we have seen, even by the summary judgment stage on their spoliation and bailment claims they couldn't find any.

The judgment of the district court is affirmed.