1
 2025 CO 40 Terra Management Group, LLC and Littleton Main Street LLC d/b/a Main Street Apartments, Petitioners v. Kathleen Keaten and Delaney Keaten, Respondents No. 23SC272
Supreme Court of Colorado, En Banc
June 23, 2025

 Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 21CA1856

 Attorneys for Petitioners: First & Fourteenth PLLC
Christopher O. Murray Julian R. Ellis, Jr. Colorado Springs,
 Colorado.

 Brownstein Hyatt Farber Schreck, LLP Sean S. Cuff Robert
 Bacaj, Denver, Colorado.

 Attorneys for Respondents: Ogborn Mihm, LLP Jason B. Wesoky,
 Kylie M. Schmidt, Denver, Colorado.

 Ross
 Ziev, P.C., Ross Ziev, Greenwood Village, Colorado.

 Attorneys for Amici Curiae Chamber of Commerce of the United
 States of America and Colorado Chamber of Commerce: Evans
 Fears Schuttert McNulty Mickus Lee Mickus, Denver, Colorado.

 Attorneys for Amici Curiae Colorado Defense Lawyers
 Association and Colorado Civil Justice League: Ruebel
 &Quillen, LLC Jeffrey Clay Ruebel, Westminster, Colorado.

 Attorneys for Amicus Curiae Colorado Plaintiff Employment
 Lawyers Association: Arckey &Associates, LLC Thomas J.
 Arckey Eric S. Steele, Denver, Colorado.

 Attorneys for Amicus Curiae Colorado Trial Lawyers
 Association: Levin Sitcoff Waneka P.C. Gideon S. Irving Robyn
 Levin Clarke, Denver, Colorado.

 Leventhal Puga Braley P.C. Alex R. Wilschke Nathaniel E.
 Deakins, Denver, Colorado.

 CHIEF
 JUSTICE MARQUEZ delivered the Opinion of the Court, in which
 JUSTICE BOATRIGHT, JUSTICE BOATRIGHT, JUSTICE HOOD, JUSTICE
 GABRIEL, JUSTICE HART, JUSTICE SAMOUR, and JUSTICE
 BERKENKOTTER joined.

 OPINION

 MARQUEZ CHIEF JUSTICE.

 ¶1
 It is well-settled that a court may sanction a party for
 destroying evidence that is relevant to claims in litigation.
Such sanctions take various forms and may include permitting
 the fact-finder to draw an adverse inference against the
 party who destroyed (or otherwise failed to preserve) the
 evidence. For a party's destruction of evidence to
 warrant sanctions, the party must have had a duty or an
 obligation to preserve the evidence in the first place. Such
 an obligation plainly arises when a lawsuit has been filed.
The question here is when, before litigation has
 commenced, a party's duty to preserve evidence arises.

 ¶2
Plaintiffs Kathleen Keaten and her adult daughter, Delaney
 Keaten (together, "the Keatens"), lived in an
 apartment in a Section 8 housing complex owned by Littleton
 Main Street LLC and managed by Terra Management Group, LLC
(together, "Defendants"). For months, the Keatens
 complained to Defendants about physical ailments they
 experienced from their alleged exposure to fumes coming from
 the apartment unit directly below theirs. The Keatens
 suspected that this apartment contained a methamphetamine
 ("meth") lab. Defendants later evicted the tenant
 in the lower unit for nonpayment of rent. In so doing,
 Defendants failed to photograph the tenant's belongings,
 contrary to company policy. After renovating the unit,
 Defendants leased it to a new tenant.

 ¶3
 More than a year later, the Keatens filed suit against
 Defendants, alleging violations of the Colorado Premises
 Liability Act (the "PLA"), § 13-21-115, C.R.S.
 (2019). The complaint alleged that the Keatens sustained
 permanent injuries from their exposure to toxic fumes
 originating from the apartment below theirs.

 ¶4
 Following a bench trial, the court entered judgment in favor
 of the Keatens on their PLA claims and awarded significant
 damages. In a written order, the court found that the
 chemical fumes in the Keatens' apartment came from the
 unit below theirs and that the Keatens' exposure to those
 fumes caused their permanent brain injuries. The court relied
 on expert testimony, the existence and relative levels of
 meth residue detected in samples taken from both apartments
 after the eviction, and the timing of the Keatens'
 injuries. Relevant here, the court also drew an adverse
 inference against Defendants based on their failure to
 preserve evidence from the downstairs unit that "would
 have established a link in the chain of evidence"
 against Defendants.

 ¶5
Defendants appealed the judgment, and a division of the court
 of appeals affirmed. Keaten v. Terra Mgmt. Grp.,
 LLC, No. 21CA1856, ¶ 29 (Mar. 16, 2023). Defendants
 then petitioned this court for certiorari review. We granted
 the

 petition to decide when a party has a duty to preserve
 evidence before litigation commences.[1]

 ¶6
We hold that a court may sanction a party for the destruction
 of relevant evidence if the party knew or should have known
 that (1) litigation was pending or reasonably foreseeable and
 (2) the destroyed evidence was relevant to that litigation.
Thus, a duty to preserve relevant evidence arises when a
 party knows or should know that litigation is pending or is
 reasonably foreseeable. Whether litigation is
 "reasonably foreseeable" is an objective standard
 that is flexible and fact-specific. It requires more than the
 mere existence of a potential claim or the distant
 possibility of a lawsuit; rather, "reasonably
 foreseeable" litigation refers to litigation that is
 imminent, likely, or reasonably anticipated.

 ¶7
 Here, we need not remand the case for application of this
 newly adopted standard. Instead, even assuming the trial
 court abused its discretion in sanctioning Defendants for the
 destruction of evidence by inferring that the missing
 evidence "would have established a link in the chain of
 evidence against [them]," we conclude that any error was
 harmless. The trial court ultimately relied

 on evidence other than the adverse inference to find that
 chemical fumes from the downstairs unit caused the
 Keatens' injuries. Accordingly, we affirm the judgment of
 the court of appeals, albeit based on different reasoning.

 I.
Facts and Procedural History

 ¶8
We set forth the facts and procedural history of this case in
 some detail to provide the necessary context for our
 decision. First, we describe the Keatens' complaints to
 Defendants about chemical fumes emanating from the unit below
 them, the associated physical ailments they experienced, and
 the inspections that followed their complaints. Next, we
 recount Defendants' failure to preserve evidence during
 the eviction of the tenant in the unit below the Keatens. We
 then discuss the testing done on both apartments. Finally, we
 summarize the lower court proceedings.

 A.
The Keatens' Complaints Regarding Chemical Odors

 ¶9
 From October 2005 to December 2019, the Keatens resided in
 Unit 303E at Main Street Apartments, a Section 8 housing
 complex[2] owned and managed by Defendants. In late
 2017, the Keatens began noticing unusual chemical smells in
 their apartment. They theorized that these fumes were coming
 from a meth lab in the apartment below them, Unit 203E. On
 March 15, 2018, the Keatens reported

 these concerns to Clancy Wells, the property manager of Main
 Street Apartments, and Sandy Werling, the compliance and
 regional manager at Terra Management. The following day,
 Wells relayed the complaint to Terra Management's Vice
 President, Lydia Smith, in an incident report. Wells
 recommended contacting law enforcement and the local housing
 authority, as well as conducting an inspection of the
 downstairs unit. About a week later, Wells did not find
 "any sign of odor or foul play" in a walkthrough of
 Unit 203E. Wells left his position soon thereafter.
Defendants did not pursue his recommended actions.

 ¶10
 On April 5, the Keatens sent a letter to Smith detailing an
 array of symptoms they were experiencing due to what they
 suspected was exposure to meth fumes from Unit 203E. These
 symptoms included stinging, itchy, watery eyes; burning
 sensations in the nose and throat; nosebleeds; heart
 palpitations; difficulty breathing; shortness of breath;
 congestion; numbness of the gums and tongue; dizziness;
 headaches; difficulty concentrating; and irritability. The
 Keatens also reported unusual activity and loud noises at
 late hours coming from Unit 203E. Kathleen Keaten
 subsequently sent a similar letter to Werling.

 ¶11
 On April 24, the Littleton Housing Authority inspected the
 Keatens' apartment and reported to Defendants a
 "slight chemical smell" in the living room that
 violated housing quality standards. On May 30, however, the
 Littleton

 Housing Authority reinspected the Keatens' apartment. At
 that time, the inspector found no unusual chemical smell, and
 the apartment passed the inspection.

 B.
The Eviction of the Tenant in Unit 203E and Defendants'
 Failure to Preserve Evidence

 ¶12
 On August 28, 2018, Defendants evicted the tenant in Unit
 203E for failure to pay rent. Although Defendants'
 standard practice is to photograph items removed from an
 apartment during an eviction, Defendants did not do so in
 this instance. Instead, the property manager on site took
 photos of the apartment after the tenant's
 belongings had been removed. The Keatens, however, took
 photographs of the tenant's belongings that had been
 moved outside. These photographs show containers that appear
 to be gas canisters and a person connected with Unit 203E
 carrying a propane tank. Defendants did not instruct the
 property manager to preserve any items so they could be
 tested for meth. Instead, the property manager had the carpet
 replaced and the floor beneath sealed, the walls painted, and
 the unit cleaned. Defendants made no effort to preserve the
 carpets or other materials from Unit 203E and conducted no
 testing of the unit at that time. A new tenant moved into the
 apartment on September 27.

 C.
Testing of Units 203E and 303E

 ¶13
 Over a year later on October 30, 2019, the Keatens filed suit
 against Defendants, seeking damages for claims under the PLA
 for injuries from exposure to toxic fumes in their apartment.

 ¶14
 In October 2019, Defendants hired A.G. Wassenaar to conduct
 sampling in a limited area inside the Keatens' apartment
 and in the hallways outside Units 203E and 303E. None of the
 samples exceeded regulatory limits set by the Colorado
 Department of Public Health and Environment. In November
 2019, A.G. Wassenaar took another six samples from the
 interior of Unit 303E; one sample from the east bathroom
 (including the exhaust fan) exceeded the regulatory limit.
¶15 In 2020, the trial court granted the Keatens'
 discovery request to test both Unit 203E and Unit 303E again.
The Keatens hired Quest Environmental Services
 &Technologies, Inc. ("Quest") to collect
 samples. This testing of Unit 203E-over a year after the
 apartment had been cleaned and renovated-showed meth levels
 that exceeded regulatory limits in several areas of the
 apartment, including the air ducts, kitchen, and interior of
 the freezer. The highest concentration of meth contamination,
 found in the air duct of the unit's east bathroom, was
 forty-four times the regulatory limit. Quest's testing of
 the Keatens' apartment also confirmed the presence of
 meth, albeit in small amounts compared to the results from
 Unit 203E.

 D.
Trial Court Ruling

 ¶16
 In August 2021, the Arapahoe County District Court held an
 eight-day bench trial. In a detailed written ruling, the
 court entered judgment for the Keatens on their PLA claims.
Based on the extensive evidence presented at trial,

the court found that the Keatens had suffered permanent brain
 injuries caused by exposure to meth fumes that emanated from
 Unit 203E.

 ¶17
The court made a formal causation finding that Unit 203E was
 the likely source of the toxic fumes in the Keatens'
 apartment "based on the high levels of [meth] . . .
 found in Unit 203E and the minimal amounts found in the
 Keatens' apartment, Unit 303E" revealed by
 Quest's testing. In reaching this ruling, the court
 relied on expert testimony opining that higher concentrations
 of contaminants point to the source of contamination, and
 that the meth contamination originated in Unit 203E and
 migrated to the Keatens' apartment above. The court also
 noted that it was highly unlikely that both Keatens, given
 their thirty-year age difference and diverging medical
 histories, would have developed the same symptoms absent
 exposure to toxic fumes.

 ¶18
 Elsewhere in its order, the trial court observed that at the
 time Unit 203E was being cleaned and renovated in September
 2018, Defendants were aware of the "Keatens'
 complaints, potential injuries[,] and Defendants'
 potential liability," yet "made no effort to
 preserve any of the evidence obtained from Unit 203[E]."
It found that "Defendants knowingly and willfully failed
 to preserve evidence and destroyed critical evidence which
 may have corroborated the Keatens' complaints." The
 court went on to observe that despite the Keatens'
 reports of

 noxious fumes, Defendants took "no remedial, proper
 investigative or corrective action."

 ¶19
 As relevant here, after formally finding causation based on
 the testimony and evidence of testing showing the relative
 meth levels in the two apartments, the court expressed
 "extreme[] concern[] about Defendants' failure to
 preserve incriminating evidence, the failure to sample or
 test, allowing the destruction of material evidence, and then
 attempting to cover up, hide or destroy evidence when they
 knew of the Keatens' claims and the threat of potential
 liability." As a sanction, the trial court drew a
 "negative inference regarding Defendants' conduct
 and the destruction of evidence which would have established
 a link in the chain of evidence against [them]." The
 court did not specify what the inference purportedly
 established.

 ¶20
The court ultimately awarded the Keatens over $10.5 million
 in damages, including over $2.5 million in exemplary damages.

 E.
Court of Appeals Ruling

 ¶21
Defendants appealed the trial court's judgment,
 challenging, as relevant here, the trial court's adverse
 inference sanction for the spoliation of evidence.

 ¶22
 The division affirmed the trial court's judgment.
Keaten, ¶¶ 1, 45. It reasoned that
 "[a] party may be sanctioned for destroying evidence
 after receiving notice that it is relevant to litigation
 regardless of whether a complaint has been

 filed, so long as the party knew or should have known that
 the destroyed evidence was relevant to pending, imminent, or
 reasonably foreseeable litigation." Id. at
 ¶ 29 (citing Warembourg v. Excel Elec., Inc.,
 2020 COA 103, ¶¶ 61-62, 471 P.3d 1213, 1225).

 ¶23
 The division rejected Defendants' contention that the
 trial court erred in imposing a sanction for spoliation when
 Defendants had no notice that litigation was pending.
Id. at ¶ 31. The division reasoned that the
 property manager submitted an incident report and that such
 reports are filled out, in part, to prepare for possible
 legal action. Id at ¶ 32. It noted the
 Keatens' vocal and persistent complaints about chemical
 fumes in their apartment; the Keatens' efforts to
 preserve evidence through photographs of the evicted
 tenant's belongings and testing for meth residue; and the
 fact that the Keatens never communicated that they would
 not be pursuing litigation or that their injuries
 had been resolved. Id. at ¶¶ 32-33. The
 division concluded that the trial court did not abuse its
 discretion in determining that Defendants "should have
 known of their potential liability" before the Keatens
 filed suit. Id. at ¶ 33.

 ¶24
 The division also rejected Defendants' contention that
 the trial court misapplied the spoliation sanction by
 improperly inferring a pathway between the apartments based
 solely on the adverse inference. Id. at ¶ 34.
The division observed that the trial court did not use the
 inference in that way. Id. Instead, the

 trial court relied on test results demonstrating the relative
 levels of meth residue in each apartment, expert testimony
 that Unit 203E was likely the source of the toxic fumes, the
 fact that fumes were present as confirmed by the Keatens and
 the Littleton Housing Authority inspector, and the fact that
 the Keatens both developed brain injuries contemporaneous
 with their exposure to those fumes. Id. In other
 words, the trial court "did not rely on an adverse
 inference from spoliation, but on evidence of contamination,
 to find that the fumes originated in Unit 203E and impacted
 [the Keatens] in Unit 303E." Id.

 ¶25
 The division reasoned that the trial court's adverse
 inference "related to the existence of a meth lab and
 the probability that evidence of such a lab would have been
 discovered" but for Defendants' destruction of
 evidence. Id. at ¶ 36. It concluded that the
 trial court did not abuse its discretion by imposing the
 spoliation sanction because the record supported a negative
 inference from the spoliation of evidence. Id. at
 ¶ 37. Importantly, however, this inference was used only
 to imply that more evidence regarding causation
 would have been discovered had Defendants preserved evidence
 from Unit 203E before renovating it. Id. at
 ¶¶ 34-35, 37.

 ¶26
We granted Defendants' petition for certiorari review and
 now affirm, albeit for different reasons.

 II.
Analysis

 ¶27
 After identifying the standard of review, we explore when a
 court may sanction a party for the spoliation of evidence and
 when a duty to preserve evidence arises. We conclude that a
 party has a duty to preserve evidence relevant to litigation
 that they know or should know is pending or reasonably
 foreseeable, and we identify factors a court may consider in
 its determination. Ultimately, we decline to remand the case
 to the trial court for application of this standard because
 any error was harmless given that the trial court's
 causation finding rested on evidence independent of the
 adverse inference.

 A.
Standard of Review

 ¶28
We review a trial court's sanction for spoliation of
 evidence for an abuse of discretion. Aloi v. Union Pac.
 R.R. Corp., 129 P.3d 999, 1002 (Colo. 2006). A lower
 court abuses its discretion when it misapplies the law or
 when its ruling is manifestly arbitrary, unreasonable, or
 unfair. Rains v. Barber, 2018 CO 61, ¶ 8, 420
 P.3d 969, 972. In addition, "[a] trial court necessarily
 abuses its discretion if its ruling is based on an incorrect
 legal standard." Ronquillo v. EcoClean Home Servs.,
 Inc., 2021 CO 82, ¶ 12, 500 P.3d 1130, 1134
(quoting Wal-Mart Stores, Inc. v. Crossgrove, 2012
 CO 31, ¶ 7, 276 P.3d 562, 564). Whether the trial court
 applied the correct legal standard is a question of law we
 review de novo. Id.

 B.
Sanctions for Spoliation of Evidence

 ¶29
 The foundation of the judicial process is the search for
 truth, which relies on the presentation of relevant evidence
 to the fact-finder. Warembourg, ¶ 1, 471 P.3d
 at 1217. Spoliation refers to the "intentional
 destruction, mutilation, alteration, or concealment of
 evidence." Spoliation, Black's Law
 Dictionary (12th ed. 2024). It can also refer to the failure
 to preserve evidence. Silvestri v. Gen. Motors
 Corp., 271 F.3d 583, 590 (4th Cir. 2001);
Warembourg, ¶ 1, 471 P.3d at 1217.

 ¶30
 Trial courts have inherent power and broad discretion to
 sanction a party for the spoliation of evidence.
Aloi, 129 P.3d at 1002 (citing Pena v. Dist.
 Ct., 681 P.2d 953, 956 (Colo. 1984)). This power is
 grounded in "the need to preserve the integrity of the
 judicial process in order to retain confidence that the
 process works to uncover the truth." Silvestri,
 271 F.3d at 590.

 ¶31
 Sanctions for spoliation "can range from monetary
 sanctions to the most drastic sanction of all-the entry of a
 default judgment." Warembourg, ¶ 2, 471
 P.3d at 1217. One such sanction is an instruction permitting
 the fact-finder to draw an adverse inference against the
 party who destroys relevant evidence. Id. at ¶
 77, 471 P.3d at 1227; Aloi, 129 P.3d at 1002. Courts
 have recognized that adverse-inference instructions serve
 both punitive and remedial purposes; they deter parties from
 destroying evidence and seek to level the evidentiary playing
 field by restoring the prejudiced party to the position it
 would have held had there

 been no spoliation. Aloi, 129 P.3d at 1002; see
 also Shaffer v. RWP Grp., Inc., 169 F.R.D. 19, 25
(E.D.N.Y. 1996); Vodusek v. Bayliner Marine Corp.,
 71 F.3d 148, 156 (4th Cir. 1995). When deciding whether to
 sanction a party for the spoliation of evidence, courts
 consider a variety of factors, including the culpability of
 the spoliator and the degree of prejudice to the other party.
Shaffer, 169 F.R.D. at 25.

 C.
The Duty to Preserve Evidence

 ¶32
 In determining whether sanctions for spoliation are
 warranted, a court must first determine whether the missing
 evidence would be relevant to an issue at trial. Cache La
 Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D.
 614, 620 (D. Colo. 2007). If not, the court's analysis
 stops there. Id. at 621. If the missing evidence
 would be relevant, then the court must determine whether the
 party who lost or destroyed the evidence was under an
 obligation to preserve it. Id.; see also
Shaffer, 169 F.R.D. at 24; Turner v. Hudson Transit
 Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991);
Micron Tech., Inc. v. Rambus Inc., 645 F.3d 1311,
 1320 (Fed. Cir. 2011) (observing that a party can be
 sanctioned for destroying evidence only if it had a duty to
 preserve it). Finally, if the party lost or destroyed
 evidence that it had a duty to preserve, the court must
 consider what sanction, if any, is appropriate for its
 destruction. Cache La Poudre, 244 F.R.D. at 621.

 ¶33
 The question in this case is when the duty to preserve
 evidence arises before the commencement of litigation. In
 Aloi v. Union Pacific Railroad Corp., 129 P.3d 999,
 1002 (Colo. 2006),

we held that sanctions are appropriate if a party destroys
 evidence that it "know[s] or should know will be
 relevant to litigation." In that case, the defendant had
 both a statutory duty to preserve the records at issue and
 actual notice that the plaintiff intended to bring a personal
 injury action. Id. at 1000, 1003. However, our
 opinion did not address when a party has a prelitigation duty
 to preserve evidence in other circumstances.

 ¶34
 In the absence of further guidance from this court regarding
 a party's prelitigation duty to preserve evidence,
 divisions of the court of appeals have concluded that a court
 may impose sanctions for spoliation when a party has notice
 that evidence is relevant to litigation, regardless of
 whether a complaint has been filed, and so long as the party
 knew or should have known that the evidence was relevant to
 pending, imminent, or reasonably foreseeable litigation.
Castillo v. Chief Alt., LLC, 140 P.3d 234, 236
(Colo.App. 2006); Warembourg, ¶ 56, 471 P.3d at
 1224. The division in this case adopted a similar approach.
Keaten at ¶ 29 (citing Warembourg,
 ¶¶ 61-62, 471 P.3d at 1225).

 ¶35
 Based on our review of common law principles and case law
 from other jurisdictions, we take the opportunity today to
 clarify that a court may sanction a party for the destruction
 of relevant evidence if the party knew or should have known
 that (1) litigation was pending or reasonably foreseeable and
 (2) the destroyed evidence was relevant to that litigation.
Accordingly, a duty to preserve

 relevant evidence arises when a party knows or should know
 that litigation is pending or is reasonably foreseeable. So,
 what does this mean?

 ¶36
 First, it is clear that a duty to preserve evidence arises
 once litigation has commenced. See Cache La Poudre,
 244 F.R.D. at 621 ("In most cases, the duty to preserve
 evidence is triggered by the filing of a lawsuit.").
Certainly the filing of a complaint or the receipt of a
 discovery request can put a party on notice that certain
 evidence is relevant to pending litigation. Turner,
 142 F.R.D. at 73.

 ¶37
 But a party also has a duty to preserve relevant evidence
 when the party knows or should know that litigation is
 reasonably foreseeable. See Apple Inc. v. Samsung Elecs.
 Co., 881 F.Supp.2d 1132, 1136-37 (N.D. Cal. 2012)
("The common law imposes the obligation to preserve
 evidence from the moment that litigation is reasonably
 anticipated."). This common law standard is an objective
 one that asks whether a reasonable party under the
 circumstances would have reasonably foreseen litigation.
Micron Tech., 645 F.3d at 1320; Bistrian v.
 Levi, 448 F.Supp.3d 454, 468 (E.D. Pa. 2020). Whether
 litigation is "reasonably foreseeable" is both
 factspecific and sufficiently flexible to afford a trial
 court the discretion to address the wide range of factual
 situations that arise in the spoliation context.
Bistrian, 448 F.Supp.3d at 468.

 ¶38
 The mere existence of a potential claim or the distant
 possibility of litigation does not trigger a pre-litigation
 duty to preserve evidence. Id.; see also Cache
 La Poudre,

244 F.R.D. at 621 ("[T]he duty to preserve relevant
 documents should require more than a mere possibility of
 litigation."). Rather, the duty to preserve evidence
 arises when the party knows or should know that litigation is
 "reasonably foreseeable"; this standard encompasses
 litigation that is imminent, likely, or reasonably
 anticipated.[3] See Cache La Poudre, 244 F.R.D.
 at 621 ("[T]he obligation to preserve evidence may arise
 even earlier [than the filing of a lawsuit] if a party has
 notice that future litigation is likely.");
Turner, 142 F.R.D. at 73 ("[T]he obligation to
 preserve evidence even arises prior to the filing of a
 complaint where a party is on notice that litigation is
 likely to be commenced."); In re Wechsler, 121
 F.Supp.2d 404, 415 (D. Del. 2000) ("A party who has
 reason to anticipate litigation has an affirmative duty to
 preserve evidence which might be relevant to the issues in
 the lawsuit.").

 ¶39
 In determining whether litigation was reasonably foreseeable
 for purposes of assessing the appropriateness of sanctions, a
 court may consider the totality of the circumstances,
 including the behavior of the party allegedly prejudiced by
 the spoliation. Cf. Castillo, 140 P.3d at 237
("[T]he behavior of the party moving for sanctions is an
 important factor for assessing whether sanctions are
 appropriate."). For example, because the plaintiff
 controls the timing of litigation and what the

 plaintiff communicates to the defendant, a court may consider
 a plaintiff's delay in reporting a concern or in filing
 suit and whether a plaintiff or someone on their behalf made
 affirmative statements suggesting an issue had been resolved
 or that no litigation is anticipated. See id.
(observing that the plaintiff never asked the defendant to
 view or retain items that caused the plaintiff's injury,
 and that the plaintiff's father told the defendant that
 the plaintiff "was doing okay, that her bills were being
 paid, that she wasn't hurt that bad, and they weren't
 going to sue or anything."). On the other hand, a
 defendant's conduct may also indicate an understanding
 that litigation was reasonably foreseeable, including actions
 such as consulting with counsel or notifying an insurer. The
 nature and extent of the injuries at issue may also inform
 this analysis. A large-scale disaster, for example, may
 indicate that litigation is reasonably foreseeable.

 ¶40
 Finally, if a court concludes that a party was under an
 obligation to preserve the evidence that was destroyed, the
 court must then determine what, if any, sanction is
 appropriate. Fujitsu Ltd. v. Fed. Express Corp., 247
 F.3d 423, 436 (2d Cir. 2001). In so doing, the court should
 consider the totality of the circumstances, including the
 culpability of the party responsible for the loss or
 destruction of evidence and the resulting prejudice to the
 other party. Cache La Poudre, 244 F.R.D. at 621. In
 assessing a party's culpability, the court may consider,
 among other relevant circumstances, the burden of preserving
 the evidence at issue, and

 whether the party deviated from normal practices regarding
 preservation (including document retention policies).
Finally, the court should consider the punitive and remedial
 purposes served by a particular sanction.[4] See id.;
Aloi, 129 P.3d at 1003.

 D.
Any Error in This Case Was Harmless

 ¶41
We recognize that this opinion clarifies the standard for the
 duty to preserve evidence before the initiation of
 litigation. Typically, we would remand a case for application
 of the announced standard. See, e.g.,
 Owners Ins. Co. v. Dakota Station II Condo.
 Ass'n, 2019 CO 65, ¶ 44, 443 P.3d 47, 53. In
 this case, however, remand is unnecessary because any error
 in the imposition of the adverse inference sanction was
 harmless.

 ¶42
 Although the trial court concluded that the destruction of
 evidence warranted a negative inference against Defendants
 that the missing evidence "would have established a link
 in the chain of evidence" against Defendants, the court
 did not identify what, precisely, the missing evidence would
 have established or how the inference factored into its
 causation finding. Even

 assuming that the missing evidence would have bolstered the
 Keatens' theory that the tenant in Unit 203E was
 operating a meth lab, the trial court did not rely on the
 existence of a meth lab to infer causation. Rather, it relied
 on expert testimony and the results of testing that showed
 the relative concentrations of meth found in Unit 203E and
 Unit 303E, as well as the low probability that both Keatens
 would develop the same symptoms at the same time in the
 absence of toxic exposure. Put differently, the trial
 court's causation finding linking toxic fumes in Unit
 203E to the Keatens' injuries did not rest on the
 negative inference the court drew from Defendants'
 destruction of evidence.

 ¶43
 Because the trial court's causation finding was
 independent of the adverse inference, we conclude that any
 error in imposing the sanction was harmless.

 III.
Conclusion

 ¶44
We clarify today that a court may sanction a party for the
 destruction of relevant evidence if the party knew or should
 have known that (1) litigation was pending or reasonably
 foreseeable and (2) the destroyed evidence was relevant to
 that litigation. Thus, a duty to preserve relevant evidence
 arises when a party knows or should know that litigation is
 pending or is reasonably foreseeable. We decline to remand
 the case for application of this standard because here, any
 error in the trial court's imposition of an adverse
 inference sanction for the spoliation of evidence was
 harmless.

 ¶45
 Accordingly, we affirm the judgment of the court of appeals.

---------

[1] We granted certiorari to review the
 following issue:

1. Whether the common law requires a clear showing
 that a prelitigation party knew litigation would be filed or
 learned litigation was likely to trigger a precomplaint duty
 to preserve evidence, or only requires that a prelitigation
 party should have known of the other party's potential
 damage and its potential liability.

[2] Section 8 is a housing program created
 by the United States Housing Act of 1937, 42 U.S.C. §
 1437f, to assist low-income families with the payment of
 rent.

[3] We recognize that a party may also
 have an independent statutory or regulatory requirement to
 preserve evidence. E.g., Aloi, 129 P.3d at
 1000.

[4] We recognize that Federal Rule of
 Civil Procedure 37(e), which addresses sanctions for the
 failure to preserve electronically stored information,
 authorizes federal courts to impose an adverse inference as a
 sanction only if the party responsible for the loss of such
 information acted with the intent to deprive another party of
 the information's use in the litigation. Colorado does
 not have a comparable rule.

---------